No. 97,406

In the Matter of THOMAS V. BLACK, *Respondent*.

(156 P.3d 641)

Opinion filed April 27, 2007.

*Alexander M. Walczak*, deputy disciplinary administrator, was on the brief and argued the cause, and *Stanton A. Hazlett*, disciplinary administrator, was with him on the formal complaint for petitioner.

*Jack Focht*, of Foulston Siefkin LLP, of Wichita, was on the brief and argued the cause for respondent, and *Thomas V. Black*, respondent, argued the cause pro se.

*Per Curiam*: We are presented with a contested proceeding in discipline filed by the office of the Disciplinary Administrator against Thomas V. Black, an attorney licensed to practice law in Kansas since 1990. Black was elected county attorney in Pratt County in 1996 and was re-elected in 2000, serving until November 2003. The Disciplinary Administrator's April 2006 complaint against Black involved his handling of informal traffic diversion funds in his capacity as county attorney.

Black implemented the informal diversion program for traffic offenders, commonly referred to as a "pay and dismiss" program, in early 1998, after the program was reviewed by the Attorney General's office and approved by the judges in Pratt County. Through the program, a traffic offender could obtain a dismissal of the case by paying the applicable court costs, plus an additional amount to be contributed to a charity. Upon receipt of a traffic offender's diversion application, the county attorney calculated the required amount of charitable contribution, based upon the nature of the current offense and the offender's prior traffic citations. The applicant was instructed to submit two payments, by check or money order, to the county attorney, with one instrument payable to the district court clerk for the amount of court costs and the other payable to the charity.

Upon receipt of the checks or money orders from an approved diversion applicant, the county attorney would submit the court costs to the district court clerk, accompanied by a proposed order dismissing the case. After the judge signed the dismissal order, copies of the order would be returned to the county attorney, who would then transmit the contribution to the applicable charity. The bulk of the contributions went to the Law Enforcement Fund (LEF) for which the county treasurer was the authorized recipient. These proceedings focus primarily on the transmittal of LEF contributions to the county treasurer.

The complaints in this proceeding involve the circumstance where the applicant deviated from the prescribed procedure by submitting a check or money order for the total amount due, payable to the Pratt County Attorney. Initially, Black would return the single, incorrectly drafted instrument to the applicant as noncompliant with the diversion program. However, Black asserts that by returning the instruments, he angered the offenders and created a delay which would result in the suspension of the offender's driver's license, unless Black assumed the additional burden of obtaining a continuance of the initial appearance date on the ticket.

Black contends that he approached the district court clerk, the county treasurer, and the chief judge to enlist their assistance in developing a procedure to split the single instrument payable to the county attorney into the two payments which were due to the court clerk and treasurer, respectively. Ostensibly, Black was told that the problem was his to solve.

Black solved his perceived dilemma by taking the noncompliant instruments to the local bank, endorsing them, and taking the face amount of the instruments in cash. He would then place the cash in his desk drawer, either in a marked envelope or identified by a "sticky note." The desk was ordinarily unlocked, albeit the desk was located in a private law firm office which Black contends was not readily accessible to the public. Black would deliver the court costs portion of the cash to the district court clerk and await the return of the dismissal order before delivering the LEF contribution to the county treasurer.

Black would typically make deliveries to the treasurer about once a week. The cash would be accompanied by a note, indicating the name of the offender and the fund receiving the contribution. Black did not request or receive a receipt from the treasurer's office for the cash deliveries until October 2003. He did not maintain a separate ledger or log of cash receipts or disbursements. He periodically received a report from the treasurer's office reflecting the names of the offenders from whom money was received, the amount received from each offender, and the fund to which the payment had been credited, *e.g.*, the LEF. The report did not specify which payments had been made in cash. Black did not reconcile the reports to his office files.

In the fall of 2003, a certified public accountant (CPA) conducted a review for Pratt County in which the CPA compared the traffic cases dismissed pursuant to a diversion order with the treasurer's receipts for the LEF from January 1 through October 31, 2003. The CPA identified 80 individuals for whom the treasurer's office did not show LEF receipts. The matter was referred to the Kansas Bureau of Investigation (KBI), and an agent interviewed Black in October 2003. The KBI was allegedly unable to account for several thousand dollars of diversion money, and Black was charged with criminal misuse of public funds. Apparently, the first jury trial resulted in a hung jury, but ultimately, on May 3, 2005, following a criminal trial on 14 counts of misuse of public funds, a jury acquitted Black on all counts.

In April 2006, the Disciplinary Administrator filed a formal complaint against Black alleging that he violated Kansas Rules of Professional Conduct (KRPC) 1.15(a) (2006 Kan. Ct. R. Annot. 435) (safekeeping property) and KRPC 8.4(d) (2006 Kan. Ct. R. Annot. 510) (misconduct). A hearing panel conducted an evidentiary hearing, after which the panel sustained Black's motion to dismiss the KRPC 8.4(d) violation. However, the panel found that Black had violated KRPC 1.15(a) when he "failed to safeguard the proceeds from the informal diversion program" and "failed to maintain proper records of the proceeds from the informal diversion program."

Black challenges the panel's factual findings, as well as its conclusion that he violated KRPC 1.15(a). Therefore, we will commence by setting forth the panel's findings and conclusions.

## "FINDINGS OF FACT

"The Hearing Panel finds the following facts, by clear and convincing evidence:

"1. Thomas V. Black (hereinafter 'the Respondent') is an attorney at law, Kansas Attorney Registration No. . . . His last registration address with the Clerk of the Appellate Courts of Kansas is . . . Pratt, Kansas . . . . The Respondent was admitted to the practice of law in the state of Kansas on April 26, 1990.

"2. In 1996, the Respondent was elected as the Pratt County Attorney. In 2000, the Respondent was re-elected. The Respondent continued as the Pratt County Attorney until November 13, 2003.

"3. In January or February, 1998, the Respondent implemented an informal diversion program for traffic offenders. Prior to beginning the informal diversion program or 'pay and dismiss' program, the Respondent consulted with the Attorney General's office. According to the Respondent's policy, traffic offenders would be required to pay the court costs associated with the filing of the traffic case and a donation to an approved charity. The main charity that received the benefit of the program was the Pratt County Law Enforcement Support Fund, a 'charity' that the Respondent developed at the time he created the informal diversion program. The amount of donation was determined based upon the offender's traffic record and on the traffic offense charged. For example, if an offender was charged with speeding, the faster the offender was traveling, the larger the donation would be.

"4. The Respondent educated the law enforcement officers regarding the policy. Specifically, the Respondent informed the law enforcement officers that the offenders wishing to participate in the informal diversion program needed to pay with two checks, one made payable to the Clerk of the District Court for the court costs and one made payable to the County Treasurer for the Pratt County Law Enforcement Support Fund or other charity. Later, the Respondent had instructions printed for the officers to provide offenders. The printed instructions, again, required that the offenders pay with two checks.

"5. Occasionally, offenders would pay with one check. And, occasionally, offenders would make their checks payable to the Respondent. When an offender would make a check payable to the Respondent, rather than return the check to the offender and require that they comply with the instructions, the Respondent would endorse the check and cash the check at the Peoples Bank in Pratt.

"6. After the Respondent received cash for the check, he would place a 'sticky' note on the cash with the offender's name and the approprate fund to be credited. The Respondent maintained the cash, unsecured, in a drawer in his desk in his law office. The Respondent kept the cash in his desk for extended periods of time.

On one occasion, the Respondent failed to provide the cash to the Clerk of the District Court and the County Treasurer for one month.

"7. When the Respondent delivered the cash to the County Treasurer, he occasionally placed the cash, unattended, on the counter in the County Treasurer's office.

"8. The Respondent never requested nor did he ever receive a receipt from the Clerk of the District Court or from the County Treasurer for the cash payments.

"9. From the inception of the informal diversion program, the Respondent failed to maintain a ledger or other documentation of checks and cash received by the Respondent and paid out by the Respondent in connection with the informal diversion program. While the Respondent maintained a file on each ticket, he did not maintain records to establish funds coming into his office or going out of his office. The Respondent never reconciled the amount of money he received from the informal diversion program with the amount of money he forwarded to the Clerk of the District Court, the County Treasurer, or other various charities.

"10. An audit of the informal diversion program revealed that thousands of dollars received by the Respondent through the informal diversion program are unaccounted for.

"11. The Respondent was charged with crimes related to funds that remain unaccounted for relating to the informal diversion program. Thereafter, the Respondent was tried twice on the criminal charges. At the conclusion of the first trial, the court declared a mistrial because the jury could not reach a verdict. At the second trial, the Respondent was acquitted of all charges.

### "CONCLUSIONS OF LAW

"1. There are specific statutes which address the County Attorney's obligation with regard to funds received arising out of their employment. First, K.S.A. 19-705 provides that:

'No county attorney shall receive any fee or reward from or on behalf of any prosecutor or other individuals, except such as are allowed by law for services in any prosecution or business to which it shall be his official duty to attend.'

"2. Next, according to K.S.A. 28-175, county employees, including County Attorneys shall receive no fees unless specifically allowed by law. All fees received by county employees, including County Attorneys must be paid to the County Treasurer on the first and fifteenth days of each month. K.S.A. 28-175.

"3. Despite the special statutes that apply to County Attorneys and the funds that they come into contact with, County Attorneys, like all attorneys, must safeguard property belonging to clients and third persons.

"4. KRPC 1.15(a) delineates attorneys' duties to clients and third persons. Specifically, KRPC 1.15(a) provides as follows:

'A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state of

Kansas. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.'

The Respondent violated KRPC 1.15(a) when he failed to safeguard the proceeds from the informal diversion program. Additionally, the Respondent violated KRPC 1.15(a) when he failed to maintain proper records of the proceeds from the informal diversion program. Had the Respondent maintained proper records of the funds, it would have been clear what happened to the funds that remain unaccounted for. Because the Respondent failed to safeguard funds belonging to clients or third persons and because the Respondent failed to maintain adequate records, the Hearing Panel concludes that the Respondent violated KRPC 1.15(a)."

## STANDARD OF REVIEW

The following standard of review governs this proceeding:

"In disciplinary proceedings, 'this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. [Citation omitted.] Any attorney misconduct must be established by substantial, clear, convincing, and satisfactory evidence.' *In re Lober*, 276 Kan. 633, 636, 78 P.3d 442 (2003).

" 'This court views the findings of fact, conclusions of law, and recommendations made by the disciplinary panel as advisory, but gives the final hearing report the same dignity as a special verdict by a jury or the findings of a trial court. Thus, the disciplinary panel's report will be adopted where amply sustained by the evidence, but not where it is against the clear weight of the evidence. [Citations omitted.]' *Lober*, 276 Kan. at 636-37. Accord *In re Pyle*, 278 Kan. 230, 236, 91 P.3d 1222 (2004) (quoting *Lober* )." *In re Angst*, 278 Kan. 500, 503-04, 102 P.3d 388 (2004).

## FACTUAL FINDINGS

Black's first contention on appeal is that the hearing panel's material findings are not supported by clear and convincing evidence. Specifically, he objects to the findings in paragraphs 6, 7, 8, 9, and 10 of the Final Hearing Report.

However, in arguing this issue, Black intertwines arguments challenging the panel's legal conclusion that the facts establish a violation of KRPC 1.15(a). He then purports to identify a second issue as to whether the violation was factually or legally supportable. Under that second issue, Black recites the rule in KRPC

1.15(a), quotes the hearing panel's conclusion of law, and cursorily states, "The factual failure of this finding was pointed out in the last argument and is adopted here without needlessly repeating it." See *Supreme Court Rule* 6.02(e) (2006 Kan. Ct. R. Annot. 36) (appellant's brief shall contain "[t]he arguments and authorities relied upon, subdivided as to the separate issues in the appeal if more than one"); *State v. Boyd*, 268 Kan. 600, 606, 999 P.2d 265 (2000) (briefs should list all issues and contain arguments and authorities for each issue). Nevertheless, we will attempt to address the two issues separately.

### Paragraph 6

"After the Respondent received cash for the check, he would place a 'sticky' note on the cash with the offender's name and the appropriate fund to be credited. The Respondent maintained the cash, unsecured, in a drawer in his desk in his law office. The Respondent kept the cash in his desk for extended periods of time. On one occasion, the Respondent failed to provide the cash to the Clerk of the District Court and the County Treasurer for one month."

Black does not seriously contest the accuracy of this finding. Rather, he argues that it is "a snapshot of a piece of evidence" which does not show the entire picture and which is, therefore, misleading. He acknowledges that the finding is "technically correct."

Instead of challenging the quantity or quality of evidence to support the panel's finding, Black endeavors to explain why the actions of others mandated the described procedure and why it was the court clerk's fault that he held cash in his desk for so long on the one occasion. He asserts that there was no evidence to establish that he failed to deliver all of the funds to the county treasurer, and he suggests that the State is using a disciplinary proceeding to retry him on the misuse of public funds allegations for which he was acquitted. In other words, Black's arguments go to the question of whether the factual finding supports the legal conclusion that Black violated the disciplinary rules, which we will address in the next issue. The panel was presented with substantial, clear, convincing, and satisfactory evidence to establish the factual finding in paragraph 6 of the Final Hearing Report.

### Paragraph 7

"When the Respondent delivered the cash to the County Treasurer, he occasionally placed the cash, unattended, on the counter in the County Treasurer's office."

The record supports Black's contention that his testimony was that, on one occasion, he left a stack of checks on the treasurer's desk when the personnel in that office were busy. However, a KBI agent testified that Black told the agent that Black had, on occasion, left money in the treasurer's office, when no one was in the office. The agent said that Black had referred to a board or tray where he left money with a sticky note indicating the name of the offender and the designated account. Therefore, although the evidence would support a finding that Black left cash unattended in the treasurer's office, it did not support the specific panel finding that Black placed unattended cash on the counter.

### Paragraph 8

"The Respondent never requested nor did he ever receive a receipt from the Clerk of the District Court or from the County Treasurer for the cash payments."

Black argues that this finding is incorrect and mischaracterizes the record, because in October 2003, shortly before leaving office, he asked the treasurer to provide him with receipts. Nevertheless, the substantial, clear, convincing, and satisfactory evidence supports a finding that, between January 1998 and October 2003, Black never requested nor did he receive a receipt from the county treasurer for the cash payments delivered to that office. Given that the investigation focused on the time frame prior to Black's last minute request, we will accept the finding, as modified to reflect Black's October 2003 request.

Black also briefly mentions that he did not realize until his criminal trial that the treasurer was preparing a receipt for his cash payments but throwing Black's copy in the trash. He contends that the county attorney had a box in the courthouse, where the payer's copy could have been placed. Again, these arguments go to the effect to be given the factual finding, rather than whether the finding is supported by the evidence.

### Paragraph 9

"From the inception of the informal diversion program, the Respondent failed to maintain a ledger or other documentation of checks and cash received by the Respondent and paid out by the Respondent in connection with the informal diversion program. While the Respondent maintained a file on each ticket, he did not maintain records to establish funds coming into his office or going out of his office. The Respondent never reconciled the amount of money he received from the informal diversion program with the amount of money he forwarded to the Clerk of the District Court, the County Treasurer, or other various charities."

Black concedes that "[t]here is no question that [Black] did not keep a ledger or log in which each transaction was independently logged separate and apart from the records in the individual case files." The record provides ample support for Black's concession, as well as the other factual findings in paragraph 9.

Black makes the disingenuous contention that the panel's finding ignores that he was precluded from admitting a receipt book from the county attorney's office showing the detail with which cash coming into the office was recorded. By Black's own testimony, the receipt book was not utilized to record the cash he obtained by negotiating the informal diversion checks or money orders. In other words, the receipt book had nothing to do with the allegations before the hearing panel and would have not have affected the factual finding.

Likewise, Black contends that the finding ignores the fact that the individual files on each ticket provided sufficient information to determine what happened to all of the money. First, we disagree with Black's assessment that the undated, handwritten notation on the diversion application of the dollar amount due to the LEF provides any record of the disbursement of those funds to the county treasurer. More importantly, however, the argument addresses whether the finding is sufficient to establish a violation and not whether the finding is supported by the evidence, which it is.

### Paragraph 10

"An audit of the informal diversion program revealed that thousands of dollars received by the Respondent through the informal diversion program are unaccounted for."

Black contends that the evidence presented to the hearing panel did not establish a dollar amount of funds for which there was no accounting. A close reading of the record confirms Black's contention.

The CPA testified that his audit disclosed 80 names of diversion offenders for whom no receipt appeared in the treasurer's records; no dollar amount was given. Black testified that he was told by the KBI agent that $4,000 was unaccounted for, but he had no personal knowledge of the amount. The KBI agent was asked: "Do you know how much money was unaccounted for?" Black's attorney objected to the question as irrelevant, declaring "it really doesn't make any difference how much money we're talking about." The presiding officer sustained the objection, agreeing that "[t]he amount of money truly makes no difference."

Thus, Black appears to change tacks on appeal, now arguing the absence of relevant evidence to establish a potential injury. Nevertheless, we agree that there was not clear and convincing evidence that the unaccounted funds totalled thousands of dollars.

Perhaps more to the point, however, was Black's initial response of "I don't know" to the question: "Is it correct that there was approximately $4,000 to $6,000 of money that was unaccounted for that should have gone into one of these funds under the pay and dismiss program?" Black further testified that he "really didn't have a real good idea" of how much informal diversion money he was receiving in any given period of time after the spring of 2001.

## CONCLUSIONS OF LAW

The hearing panel concluded that Black violated KRPC 1.15 (a) (2006 Kan. Ct. R. Annot. 435), which is part of the rule entitled "Safekeeping Property" and which states:

"(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state of Kansas. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation."

The panel opined that Black failed to comply with the rule in two respects: He failed to safeguard the proceeds from the informal diversion program, and he failed to maintain proper records of the proceeds from the informal diversion program.

*Safekeeping*

The comments following KRPC 1.15 include a statement that the rule "requires that lawyers in the practice of law who are entrusted with the property of law clients and third persons must hold that property with the care required of a professional fiduciary." 2006 Kan. Ct. R. Annot. 440. Black conceded that the money in question did not belong to him, either personally or in his capacity as county attorney. He further acknowledged that he was the custodian of those diversion funds paid to the county attorney. *Cf.* K.S.A. 17-4903(d) (defining "fiduciary" to mean, *inter alia,* "custodian"). Thus, Black was clearly a practicing lawyer who was entrusted with the property of third persons, as contemplated by KRPC 1.15(a). Just as clearly, as noted in the rule's comments, "[a] violation of Model Rule 1.15 subjects a lawyer to professional discipline." 2006 Kan. Ct. R. Annot. 440.

Pointedly, Respondent does not complain about the panel's finding in Paragraph 5 of the Final Hearing Report, the relevant portion of which states:

"When an offender would make a check payable to the Respondent, rather than return the check to the offender and require that they comply with the instructions, the Respondent would endorse the check and cash the check at the Peoples Bank in Pratt."

Ignoring the question of the propriety of a public official cashing a negotiable instrument payable to the public office and taking personal custody of the cash proceeds, we will address that procedure from the perspective of Black's duty to safeguard the property of others.

The check or money order made payable to the Pratt County Attorney was in a form which was relatively safe. If the instrument were to be lost, misplaced, or stolen, the finder or thief would need to find a way to negotiate the instrument and would, presumably, leave a paper trail. By converting the instrument to cash, Black

substantially increased the risk that the offender's payment would be irretrievably and undetectably lost or stolen. Such an act does not comport with the duty to safeguard the property.

After converting the payments to cash, Black compounded the risk of loss by keeping the money in an unsecured desk drawer for some period of time. He contends that the desk's location in a private law office was such that it would have been unlikely that anyone could have obtained access to the cash without being seen by others in the office. Yet, Black acknowledges that all of the other occupants of the law office would have had access to the desk. He complains that the panel's finding that cash was kept in the unsecured desk for up to a month only referred to one occasion. Yet, he testified that he made deliveries to the treasurer's office only about once a week, indicating that cash was routinely kept unsecured for days at a time.

The unacceptable risks that Black took with other's cash is exemplified by an incident in which he found an unexplained $5 in his desk drawer, only to subsequently learn that a delivery to the treasurer's office was $5 short. The care with which Black handled the property of others fell short of that which would be expected of a professional fiduciary.

Black rationalizes his actions as being necessary because of the dilemma created by the failures of others. He points out that the traffic offender initiated the problem by sending one instrument, payable to the county attorney, rather than issuing separate checks to the court clerk and treasurer, as directed. Then, Black complains that the court clerk and treasurer refused to fix the problem by accepting the endorsed instrument for the total amount and issuing a check to the other office for its share of the total.

Black's "necessity" defense does not withstand scrutiny. The simple solution to the offender's noncompliance with the informal diversion program was to return the offender's nonconforming payment and deny that person diversion until he or she complied with the rules. Black's excuses for abandoning that procedure do not convince us that he had no choice but to handle the payments in the manner that he did.

Nevertheless, the question is not so much why Black allowed offenders to submit nonconforming payments, but rather the question is whether Black failed to safeguard and take care of those payments while in his custody. We find that the evidence clearly established that Black's handling of those funds fell below the standard of a professional fiduciary and, thus, Black violated his responsibility under KRPC 1.15(a).

*Recordkeeping*

The comments to KRPC 1.15 state that the rule requires a lawyer to preserve " 'complete records' " concerning the law firm's trust accounts and obligates a lawyer to " 'promptly render a full accounting' for the receipt and distribution of trust property." 2006 Kan. Ct. R. Annot. 440. Here, Black did not keep a complete record of the informal diversion funds over which he exercised control as a custodian. He was unable to render a full accounting for the receipt and distribution of the informal diversion payments which were made payable to the Pratt County Attorney. Indeed, he admitted that he "really didn't have a real good idea" of how much money that he had "received in a given period of time," after the spring of 2001, and he did not know how much money coming into the informal diversion program was unaccounted for.

Black contends that he did keep adequate records because he had an individual file for each diversion applicant that contained: a copy of the diversion application with handwritten notations as to the amount of the court costs and the donation; a file-stamped copy of the Order of Dismissal; and the transmittal of the order to the offender. He then claims that "[i]t was possible from an examination of these individual files to reconstruct a complete history of how much money was paid into the office of the county attorney on each individual informal diversion case." That statement misses the point.

First, the initial concerns were not so much about the amount of money coming *into* the county attorney's office, but rather about the amount of money that came *out of* the county attorney's office to the county treasurer. Even then, Black acknowledged that he had no idea of the amount of diversion money coming into his

office. The fact that a CPA might be able to go through boxes of file folders and reconstruct what happened does not satisfy Black's professional obligation to maintain complete records from which Black, as the fiduciary, could promptly render an accounting of the receipt and distribution of other people's money. The whole point of maintaining complete records is to provide contemporaneous information and eliminate the need to have an outsider *reconstruct* what happened.

Further, the individual files do not contain all of the necessary information. While a handwritten notation on the diversion application indicates the amount of money that was designated for the LEF, there is nothing to reflect when or if the LEF funds were actually delivered or transmitted to the treasurer.

Black did not obtain a receipt from the treasurer. Although he attempts to shift the blame for this oversight to the treasurer's office, the responsibility for maintaining a complete record rested upon Black, not the treasurer or anyone else. Black argues that his records included the report of receipts generated by the treasurer. However, Black admitted that he never reconciled the treasurer's reports against his own case files, and he does not explain how the treasurer's report meets his obligation to verify that all diversion monies designated for the LEF were delivered to the treasurer.

The ineffectual nature of Black's records is underscored by an incident in which he perceived that he was short $150 cash in his desk drawer for a particular case and he paid the treasurer $150 out of his personal funds. Black contends that he subsequently learned from examining the court records that the desk drawer stash had not been short. However, the point is that Black's own records were apparently insufficient for him to determine the amount of desk drawer cash that belonged to that particular offender.

Finally, Black suggests that his obligation was to turn over public funds to the county treasurer. He points out that he testified that he cashed the instruments and delivered all of the designated funds to the treasurer and the Disciplinary Administrator did not prove otherwise. Again, Black's argument is misdirected. We are not dealing with a misuse of public funds allegation, but rather with Black's

ethical obligation to keep records. In that context, it was for Black to show the existence of written records to back up his testimony of what he did with the money.

## PRIOR DISCIPLINARY PROCEEDING

In making its recommendation for discipline, the hearing panel considered the existence of aggravating factors, one of which was recited as follows:

"Prior Disciplinary Offenses. At the time the Respondent applied to take the Kansas bar examination, the Kansas Board of Law Examiners held a hearing to determine whether the Respondent had the requisite character to receive a license to practice law in this state.

"According to the report filed by the Board of Law Examiners with the Court, during the first year at Washburn Law School, the Respondent conducted independent research on a project after having been specifically instructed by his professor not to do so. At the time the professor confronted the Respondent regarding the independent research, the Respondent falsely told his professor that he had not conducted independent research. Thereafter, the Respondent signed an affidavit that contained false information regarding the incident. The Respondent then falsely told the professor that his actions were caused by organic brain damage suffered in an automobile accident. The Respondent also falsely told his professor that he would have 'white-outs' and was unable to recall events during these periodic episodes.

"Because the Respondent expressed genuine remorse and because he faced up to the consequences of the difficult period in his life, the Board of Law Examiners concluded that the Respondent possessed the requisite character and recommended that he be allowed to take the bar examination. The Kansas Supreme Court approved the Board of Law Examiner's report and the Respondent was permitted to take the February, 1990, bar examination.

"It is proper to consider the Respondent's character hearing and evidence of the honor code violation as prior discipline based on Kan. Sup. Ct. R. 701(f), which provides:

'Notwithstanding the foregoing restrictions, applications and other information required incident to an application for admission to the bar may be released to:
    . . . .
    (2) . . . the office of the Disciplinary Administrator, . . . , for disciplinary purposes.
Accordingly, the Hearing Panel concludes that the Respondent has a record of prior discipline. However, the Hearing Panel also concludes that because the Respondent's record of prior discipline is remote in time, it is of little relevance."

Black argues that the report should not have been considered because it was too remote in time. The remoteness argument goes to the weight to be given the evidence, and the hearing panel appropriately noted that element of the prior offense.

Black also contends the he was not an attorney when he committed the honor violation in law school, so that the incident cannot be labeled a prior disciplinary offense. As the panel noted, Supreme Court Rule 701(f)(2) (2006 Kan. Ct. R. Annot. 623) specifically permits disclosure of the information to the Disciplinary Administrator to be used "for disciplinary purposes." The only question might be the label to assign to the information. However, we have no problem finding that an honor code violation in law school that results in a hearing before the Kansas Board of Law Examiners can be characterized as a prior disciplinary offense.

## APPROPRIATE SANCTION

The hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (Standards). Specifically, pursuant to Standard 3, the panel considered the factors of the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors. The hearing panel unanimously recommended that Black be censured by the Kansas Supreme Court and that the censure be published in the Kansas Reports. That recommendation is advisory only. See Supreme Court Rule 212(f) (2006 Kan. Ct. R. Annot. 295).

The hearing panel found the prior disciplinary offense, a pattern of misconduct, the refusal to acknowledge the wrongful nature of the conduct, and the substantial experience in the practice of law to be aggravating factors. Respondent's previous good character and reputation, as evidenced by numerous supporting letters, was considered a mitigating factor.

Black commences his challenge to the recommended sanction by continuing to argue that he did not violate KRPC 1.15. He specifically asserts that "Respondent should not be found to have kept inadequate records."

Black then asserts that no person or entity has come forward to assert a monetary claim against Black for deficient performance as county attorney nor has anyone made claim against the county attorney's bond required by K.S.A. 19-701. Therefore, we should disregard the aggravating factor that Black caused actual injury and the aggravating factor that Black displayed a pattern of misconduct by failing to safeguard and account for the diversion funds for a period of years. In addition, Black argues that the mere fact that one chooses to defend against a disciplinary proceeding should not justify an aggravating finding that he refused to acknowledge the wrongful nature of his misconduct. Therefore, Black argues that published censure is too harsh and asks this court to consider an informal admonition or some other form of discipline short of published censure.

Standard 4.14 describes the typical admonition scenario as: "Admonition is generally appropriate when a lawyer is negligent in dealing with client property and causes little or no actual or potential injury to a client." In contrast, the hearing panel relied upon Standard 4.13, which states: "Reprimand is generally appropriate when a lawyer is negligent in dealing with client property and causes injury or potential injury to a client."

Black makes a valid point that the Disciplinary Administrator did not clearly and convincingly establish that Black's cavalier handling of diversion cash or his inadequate recordkeeping caused thousands of dollars of *actual* injury. However, the audit of the treasurer's records for a small portion of the time the diversion program was in existence revealed that LEF payments by 80 offenders could not be accounted for. Moreover, by his own admission, Black was handling a large volume of informal traffic diversions after the spring of 2001. The Standards speak to the potential for injury. Here, that potential was substantial.

Likewise, the fact that the evidence did not identify specific victims who were unequivocally injured does not negate the finding that he engaged in a pattern of misconduct for a period of years. Again, the misconduct was failing to safeguard the diversion cash and failing to account for the receipt and distribution of that cash.

Finally, the hearing panel's finding that Black refused to acknowledge the wrongful nature of his conduct is not based solely on the fact that Black chose to contest the proceeding. Rather, the finding is justified by Black's persistence that his conduct was not wrongful because the Disciplinary Administrator failed to prove that Black misused any of the diversion money, *i.e.*, no harm, no foul. Apparently, Black still does not get it. He fails to grasp that keeping other people's cash in an unlocked desk drawer, identified by a sticky note, and failing to get receipts for the delivery of the cash to the proper recipient or otherwise maintain a record of cash distributions falls woefully short of the professional fiduciary standard imposed on Black as a practicing lawyer.

In summary, the panel's conclusion that Black violated KRPC 1.15(a) is supported by substantial, clear, convincing, and satisfactory evidence. The court accepts the panel's recommended discipline of published censure, although a minority of the court would impose more severe discipline.

IT IS THEREFORE ORDERED that respondent, Thomas V. Black, be and he is hereby disciplined by published censure in accordance with Supreme Court Rule 203(a)(3) (2006 Kan. Ct. R. Annot. 243) for violation of KPRC 1.15.

IT IS FURTHER ORDERED that this opinion be published in the official Kansas Reports and that the costs of these proceedings be assessed to respondent.