(305 P.3d 702)
No. 108,291

STATE OF KANSAS, *Appellant,* v. JAMES ALLEN, *Appellee.*

Opinion filed July 19, 2013.

*Thomas E. Knutzen*, assistant county attorney, *Jason W. Belveal*, county attorney, and *Derek Schmidt*, attorney general, for appellant.

*Branden A. Bell*, of Sandage Bell, LLC, of Kansas City, Missouri, for appellee.

Before STANDRIDGE, P.J., ARNOLD-BURGER and POWELL, JJ.

STANDRIDGE, J.: The district court granted James Allen's motion to dismiss the vehicular homicide charge against him for lack of sufficient evidence. The State appeals this dismissal, arguing that Allen had no right to a preliminary hearing on the motion, the State should not have been required to provide evidence of an aggravating factor independent of a traffic infraction, and the State provided sufficient evidence that Allen committed vehicular homicide. For the reasons stated below, we conclude the district court erred by holding an evidentiary hearing on Allen's pretrial motion to dismiss for lack of sufficient evidence because it presented a question of fact that should have gone to a jury to decide. We further conclude that, even if it had been proper for the district court to hold an evidentiary hearing, the district court erred in granting Allen's motion to dismiss because the State presented sufficient evidence to establish that Allen's actions could be found to be a material deviation from the standard of care which a reasonable person would observe under the totality of the circumstances.

## FACTS

Shortly after 5:30 p.m. on Friday, February 12, 2010, Allen was involved in a two-vehicle accident with Katherine Olmsted in Jefferson County, Kansas. Olmsted was declared dead at the scene of the accident. The state trooper who responded to the accident, Justin Olberding, concluded based on evidence and statements at the scene that Allen was driving a white Buick LaCrosse northbound when he struck Olmsted's southbound red Toyota Tacoma head on; the collision occurred entirely in the southbound lane of travel; Allen's car showed no braking prior to impact; and Olmsted's car created skid marks for 50 feet prior to the area of impact.

On September 22, 2011, the State filed a complaint/information against Allen for vehicular homicide in violation of K.S.A. 21-3405, a class A person misdemeanor. On November 21, 2011, Allen was informally arraigned, entered a plea of not guilty, and filed a written request for jury trial. On January 10, 2012, Allen filed a motion to dismiss, arguing that the prosecution lacked any evidence of a material deviation from the standard of care, a required element to prove beyond a reasonable doubt to the jury that he was guilty of vehicular homicide. Specifically, Allen claimed that Kansas law requires (1) a violation of the law and (2) some other aggravating factor independent of such violation to sustain a conviction for vehicular homicide under *State v. Krovvidi*, 274 Kan. 1059, 58 P.3d 687 (2002).

Over the State's objection that Allen's motion was not ripe until after the State had presented its evidence at trial, the district court set the matter for an evidentiary hearing to determine whether the State had sufficient evidence to proceed to trial. At the March 6, 2012, evidentiary hearing, the State renewed its objection to the evidentiary hearing to no avail.

The State presented the testimony of Trooper Olberding, who stated Allen told him at the scene that Allen was going 60 miles per hour prior to the accident but could not remember anything else. Allen later told Olberding that the last thing Allen remembered before the accident was seeing a boat out on a lake—a distance of roughly half a mile from the accident. Trooper Olberding

noted that the blood-alcohol and toxicology reports showed that neither Allen nor Olmsted had alcohol or drugs in their systems. Olberding testified that there were no adverse weather conditions or other extenuating circumstances at the scene of the accident when he arrived that would have required Allen to swerve out of his lane of traffic. Olberding further testified that there was no evidence to suggest Allen was on the phone immediately before or during the accident or Allen was traveling too fast for the conditions.

The State also presented testimony from Linda Faith, who was driving immediately behind Allen's vehicle for roughly 6 miles prior to the accident. Faith testified that she was familiar with the road, having traveled it every day to and from work for 8 years. She said it was narrow and hilly and had twists and turns which required more caution than other roads. She also testified that the time of the accident was one of the road's busier times.

Faith stated that she observed Allen's car cross the center line a total of five times during the 6 miles she was behind him. She described the car as drifting across the line as opposed to swerving or jerking, consistent with someone who was texting, using a cell phone, or under the influence of alcohol. However, she also described the driving as "inattentive" and that she herself had "done that kind of thing." Faith stated that the last time she saw the white car cross the center line, it stayed there for at least 7 or 8 seconds, after which it plowed into the red truck without braking. Faith said she remembered these details because it was a clear day, she could see a red pickup coming down the hill in the opposite direction, and she was wondering at the time how the driver of the white car did not see it. She noted in her testimony that she did not see anything in either lane that would have caused the white car to swerve.

At the conclusion of the evidentiary hearing, the district court ordered the parties to brief the issues. In its brief, the State again objected on grounds that Allen's motion to dismiss was not ripe until after the State's case-in-chief has been presented to the trier of fact; thus, there was no legal basis to decide the motion. Alternatively, the State argued it had sustained the evidentiary burden

required to proceed to trial. The district court ultimately granted Allen's motion to dismiss based on insufficient evidence of an aggravating factor independent of a traffic infraction as required to sustain a conviction for vehicular homicide under *Krovvidi*. On June 6, 2012, the State filed a notice of appeal stating it was appealing the district court's May 31 order granting the motion to dismiss and "all other rulings adverse to the State," citing K.S.A. 22-3602 as authority.

## ANALYSIS

On appeal, the State argues: (1) Allen did not have the right to a preliminary hearing, (2) the district court applied the wrong legal standard for a charge of vehicular homicide in granting the motion to dismiss, and (3) the State provided sufficient evidence that Allen committed vehicular homicide. Before reaching the merits of the arguments presented by the State, however, we first must address two preliminary matters raised by Allen in the responsive brief he filed on appeal.

### A. *Preliminary Matters*

1. *The State's failure to cite to the record at the beginning of the discussion of each issue in its brief does not warrant dismissal*

Allen claims the State waived its right to raise the issues it now attempts to present on appeal by failing to comply with the Kansas Supreme Court rule requiring appellate briefs to include a reference to the location in the record where the issue presented was raised to the district court and ruled on.

Interpretation of a Kansas Supreme Court rule is a question of law. Appellate review of questions of law is unlimited. See *Gerhardt v. Harris*, 261 Kan. 1007, 1010, 934 P.2d 976 (1997).

Supreme Court Rule 6.02 (2012 Kan. Ct. R. Annot. 38) specifies the required content of an appellant's brief. The brief must include the arguments and authorities relied on, separated by issue, and:

"Each issue must begin with citation to the appropriate standard of appellate review and a pinpoint reference to the location in the record on appeal where the issue was raised and ruled on." Supreme Court Rule 6.02(a)(5) (2012 Kan. Ct. R. Annot. 39).

Allen is correct that the Kansas Supreme Court and the Court of Appeals have found on several occasions that appellants who have failed to· comply with this rule have abandoned their issues. See, *e.g.*, *State v. Mitchell*, 284 Kan. 374, 377, 162 P.3d 18 (2007) ("Mitchell raises no argument and cites no authority to support his claim."); *Mid-Continent Specialists, Inc. v. Capital Homes*, 279 Kan. 178, 191, 106 P.3d 483 (2005) ("[Appellant] offers no authority for this proposition."); *State v. Holmes*, 278 Kan. 603, 622, 102 P.3d 406 (2004) ("Holmes does not cite any authority to support his position."); *Goodman v. Wesley Med. Center*, 276 Kan. 586, 596, 78 P.3d 817 (2003) ("Goodman fails to offer any legal authority for her arguments."); *McCain Foods USA, Inc. v. Central Processors, Inc.*, 275 Kan. 1, 15, 61 P.3d 68 (2002) ("[Appellant] cites no authority requiring an individual transfer analysis."); *Enlow v. Sears, Roebuck & Co.*, 249 Kan. 732, 744, 822 P.2d 617 (1991) ("Enlow does not specify the error or cite legal authority supporting her contention."); *State v. Martinez*, 38 Kan. App. 2d 324, 334, 165 P.3d 1050 (2007) ("Martinez does not explain how the sentencing court denied his right to due process."); *Brennan v. Kunzle*, 37 Kan. App. 2d 365, 389, 154 P.3d 1094 (2007) ("The Kunzles provide no relevant legal authority and simply make a conclusory argument."), *rev. denied* 284 Kan. 945 (2007), *overruled on other grounds by Osterhaus v. Toth*, 291 Kan. 759, 249 P.3d 888 (2011); *Bethany Med. Center v. Niyazi*, 20 Kan. App. 2d 464, 466, 890 P.2d 349 (1995) ("This court will not consider issues not supported by argument or authority."). However, as the State observes, in almost all of those cases, the issue was not a failure to cite to the record, but a failure to cite to any legal authority or a failure to make a supporting argument. In the only case where the appellate court declined to address an issue due to an appellant's failure to cite to the record, the appellant had completely failed to cite to the record anywhere in his brief. *City of Overland Park v. Hilgert*, No. 92,240, 2005 WL 331805, at *7 (Kan. App. 2005) (unpublished opinion).

Moreover, the rules do not provide for the dismissal of the appeal as a sanction for any noncompliance. *Garner v.·Kansas Parole Board*, No. 93,659, 2005 WL 2254536, at *1 (Kan. App. 2005)

(unpublished opinion). Supreme Court Rule 5.05(a) (2012 Kan. Ct. R. Annot. 35) only provides that an appellate court "may dismiss an appeal due to a *substantial* failure to comply with these rules." (Emphasis added.)

In this case, the State made the necessary citations to the record for each issue in the fact statement of its brief, rather than under the discussion of each issue. We find this minor, technical failure does not compare with the more extreme cases of noncompliance above, where the court found the appellants had abandoned their issues. In those cases, the lack of argument and legal authority made it nearly impossible for the court to discern and address the appellants' issues. Here, however, the State provided extensive argument and relevant legal authority from which this court can research and analyze the issues. Placing the required record cites in the statement of facts does not require "detective skills" on the part of this court to determine whether the issues were properly raised and ruled on below. See *Kansas Medical Mut. Ins. Co. v. Svaty*, 291 Kan. 597, 623, 244 P.3d 642 (2010) ("Even if the failure to locate the ruling is due to our lack of detective skills, the fault lies with [Jeanette] Allen [filed underlying medical malpractice claim] who had an obligation to provide a record citation for this critical finding that is the foundation for her arguments.").

In sum, we find the State's failure to provide citations to the record in the location required by Rule 6.02(a)(5) in its brief does not warrant a finding that it has abandoned its issues on appeal because it was not a substantial failure to comply under Rule 5.05. The court may thus properly address these issues.

## 2. *The notice of appeal properly identified all of the State's issues*

Allen also asserts that this court does not have jurisdiction to reach the first two issues presented on appeal because the State did not identify them in its notice of appeal. Allen first contends that the State's citation to K.S.A. 22-3602 generally—as opposed to the exact subsection granting the right to appeal from an order dismissing a complaint, K.S.A. 22-3602(b)(1)—does not pass muster under the specificity requirements required by Kansas appellate courts. In support of this contention, Allen notes the State is

not just appealing the district court's dismissal order but also " 'all other rulings adverse to the State,' " which Allen claims there is no statutory authority to appeal. Allen also claims the State's designation in its notice of appeal of only the district court's May 31, 2012, order dismissing the case precludes the State from challenging the January 26 rulings relating to the State's first two issues on appeal.

Whether jurisdiction exists is a question of law over which this court's scope of review is unlimited. *State v. Ellmaker*, 289 Kan. 1132, 1147, 221 P.3d 1105 (2009), *cert. denied* 130 S. Ct. 3410 (2010). The State's authority to appeal in a criminal case is limited by statute. The State may elect from the limited jurisdictional bases in its appeal. See *State v. Berreth*, 294 Kan. 98, 112, 273 P.3d 752 (2012). The appellate court has jurisdiction to entertain a State's appeal only if it is taken within time limitations and in the manner prescribed by the applicable statutes. *State v. Sales*, 290 Kan. 130, 134, 224 P.3d 546 (2010). An appellate court only obtains jurisdiction over the rulings identified in the notice of appeal. *State v. Huff*, 278 Kan. 214, 217, 92 P.3d 604 (2004). The State cannot expand its elected statutory basis for the appeal without notification or a formal amendment, and the appellate court cannot *sua sponte* select the jurisdictional basis for an appeal by the State. See *Berreth*, 294 Kan. at 113, 116-17.

   a. *The State was not required to cite the statutory subsection serving as the basis of its appeal*

The statutory jurisdictional bases for State appeals as a matter of right are provided in K.S.A. 22-3602(b). The State may elect to appeal on one of several grounds, including "[f]rom an order dismissing a complaint, information or indictment." K.S.A. 22-3602(b)(1). As Allen observes, the court's recent trend has been to hold the State to its jurisdictional election because the State's election of appellate basis·has a significant impact on the defendant. See *Berreth*, 294 Kan. at 117.

In this case, the State's notice of appeal stated:

"[T]he State appeals the Order of the District Court, entered herein on May 31st, 2012, granting Defendant's Motion to Dismiss and dismissing the complaint filed

by the State herein, along with all other rulings adverse to the State. This appeal is taken to the Kansas Court of Appeals pursuant to K.S.A. 22-3602."

As the State points out, it is not attempting to change the jurisdictional basis for its appeal; it continues to appeal from the order dismissing the complaint. Thus the cases Allen cites in which the State sought to change the basis for its appeal are distinguishable from this case.

Moreover, Supreme Court Rule 2.02 (2012 Kan. Ct. R. Annot. 10) does not require assertion of a specific ground in the notice of appeal for direct appeals to the Court of Appeals, unlike Supreme Court Rule 2.01 (2012 Kan. Ct. R. Annot. 10), which requires a specific ground for direct appeals to the Supreme Court. *Berreth*, 294 Kan. at 108, 114; Supreme Court Rules 2.01, 2.02; see Judicial Council forms at http://www.kansasjudicialcouncil.org/Supreme-CourtRules.shtml#Appellate. Accordingly, in *State v. Hurla*, 274 Kan. 725, 728, 56 P.3d 252 (2002), our Supreme Court found a notice of appeal was sufficient to convey appellate jurisdiction to review dismissal of a complaint where the notice of appeal only designated that it was appealing from the " 'findings, orders and judgments of the district court entered on September 7, 2001,' " but did not cite the statutory authority for the appeal at all.

Because the State was not required to identify the statutory basis for its appeal in its notice of appeal, it did not err by failing to cite the specific statutory subsection under which it was appealing, and this court has jurisdiction to hear its claims.

b. *The State properly identified the rulings from which it appealed because they were "one and the same" with the order granting the motion to dismiss*

Allen claims the State failed to properly identify the January 26 rulings on which its first two claims on appeal are based or the law permitting it to appeal those issues. However, Kansas caselaw indicates that this court should find both of those rulings to be part of the district court's May 31 order granting Allen's motion to dismiss.

Supreme Court Rule 2.02 only requires an appellant to "designate the judgment or part of the judgment or other appealable

order." Furthermore, in *State v. Boyd*, 268 Kan. 600, 604, 606, 999 P.2d 265 (2000), the Kansas Supreme Court outlined the legislative history of notice pleading and observed that now "[t]here is no statute or court rule which expressly requires an appellant to set forth all of the errors that will be contested on appeal in the notice of appeal" because the notice of appeal is "not a device to alert the parties to all possible arguments on appeal." This is because the other party determines the issues to be argued by reading the docketing statement and brief filed and is thus not affected if the original party has not detailed its arguments in the notice of appeal. See 268 Kan. at 606. Therefore, the court in that case found that the defendant's notice of appeal stating he was appealing from "his conviction" was sufficient to give the Court of Appeals jurisdiction to hear issues other than the sufficiency of the evidence, including evidentiary and procedural claims. 268 Kan. at 607-08. In addition, a panel of this court held in *Tullis v. Pittsburg State Univ.*, 28 Kan. App. 2d 347, 349, 16 P.3d 971 (2000), that a notice of appeal was "not so general or unclear as to require this court to search through the record to determine the basis for the appeal."

Finally, a line of Kansas Supreme Court cases shows that a notice of appeal referencing a particular decision may be general enough to include other related matters. In *Huff*, the court found that the district court's motion to dismiss and its decision to grant the defendant's suppression motions were "one and the same" so that the State's citation to the statute authorizing an appeal from the dismissals was sufficient to preserve its right to challenge the basis of the dismissal decisions, which included the suppression of certain evidence. 278 Kan. at 218-19. The court noted that the State's statement in its notice of appeal that it was seeking review of the district court's " 'decision' " was general enough to include the basis of the dismissal and to put the defendants on notice that the suppression would be addressed. 278 Kan. at 219. Similarly, in *State v. Garza*, 295 Kan. 326, 330, 286 P.3d 554 (2012), the case was dismissed in the same hearing in which the evidence was suppressed, so the Kansas Supreme Court found that the suppression and the dismissal were " 'one and the same.' " It held that the State's notice of appeal stating that it was appealing "all issues

from" the suppression hearing was broad and general enough to put the defendant on notice that it was appealing the suppression ruling. Moreover, the court noted that the State gave notice to the defendant at the hearing that it would be appealing. 295 Kan. at 330.

Like in *Huff*, the basis of the district court's May 31 decision to grant Allen's motion to dismiss included its previous January 26 decisions to hold an evidentiary hearing on the motion and to require proof of an aggravating factor independent of a traffic infraction to establish vehicular homicide. Because the district court could not have granted the motion to dismiss without having first made these decisions, these two issues are "one and the same" with the district court's May 31 order as in *Garza* and *Huff*. Beyond indicating that it was appealing from the order dismissing the complaint, the State was not required under *Boyd* to identify each legal argument of its appeal. The State's notice of appeal indicating it was appealing from the district court's May 31 order granting Allen's motion to dismiss and "all other rulings adverse to the State" certainly put Allen on notice that the State might be appealing the district court's related January 26 rulings, especially since it repeatedly objected to those rulings throughout the proceedings.

Therefore, because the district court's prior decisions to hold an evidentiary hearing and to require proof of an aggravating factor independent of a traffic infraction are "one and the same" with its later order granting Allen's motion to dismiss for lack of sufficient evidence, the State's notice of appeal sufficiently identified those two issues in its notice of appeal stating it was appealing from the district court's May 31 dismissal of the case. This court thus has jurisdiction to hear the State's first two issues on appeal.

## B. *The Merits of the Issues Presented by the State on Appeal*

### 1. *The nature and propriety of the evidentiary hearing*

The State's first claim on appeal is that the district court erred by requiring it to establish sufficient evidence to support the misdemeanor charge of vehicular homicide at what the State alleges was a de facto preliminary examination before allowing the case to proceed to trial. Even if not construed as a preliminary hearing,

the State argues that it was procedurally improper to hold an evidentiary hearing on a motion to dismiss for lack of sufficient evidence for a misdemeanor charge. The crux of the State's argument is that Allen's motion was not ripe for decision and the district court should have allowed the case to proceed to trial.

a. *The record does not support a finding that the evidentiary hearing held in this case was actually a preliminary hearing under K.S.A. 22-2902*

Interpretation of a statute is a question of law over which appellate courts have unlimited review. *State v. Dale*, 293 Kan. 660, 662, 267 P.3d 743 (2011). The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *State v. Arnett*, 290 Kan. 41, 47, 223 P.3d 780 (2010). When a statute is plain and unambiguous, an appellate court does not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it. Where there is no ambiguity, the court need not resort to statutory construction. Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history to construe the legislature's intent. *Double M Constr. v. Kansas Corporation Comm'n*, 288 Kan. 268, 271-72, 202 P.3d 7 (2009); see *State v. Urban*, 291 Kan. 214, 216, 239 P.3d 837 (2010).

The right to a preliminary examination is purely statutory. *In re D.E.R.*, 290 Kan. 306, 312-13, 225 P.3d 1187 (2010); *State v. Smith*, 225 Kan. 796, 798, 594 P.2d 218 (1979). Sometimes referred to as a preliminary hearing, a preliminary examination is provided for under K.S.A. 22-2902 and only applies to those charged with felony crimes. K.S.A. 22-2902(1).

The district court did not grant Allen a preliminary hearing. First, Allen was charged with a misdemeanor, and a preliminary hearing under K.S.A. 22-2902 only applies to felony crimes. In addition, the district court never mentioned K.S.A. 22-2902 in granting the hearing or referred to the hearing as a preliminary hearing or preliminary examination.

Moreover, had the district court granted Allen a hearing under this section, several other things would have had to happen. First,

the district court could not have arraigned Allen until after this "de facto preliminary hearing." See K.S.A. 22-2902(7). Instead, it arraigned him on November 21, 2011, well before the May 31, 2012, hearing. Second, the district court could not have accepted any plea from Allen until after the preliminary hearing. See K.S.A. 22-2902(3). But it did accept a plea from him on November 21. Third, the hearing would have had to have been conducted within 10 days of Allen's first appearance. See K.S.A. 22-2902(2). The district court held this hearing almost 4 months later. Fourth, Allen would not have needed to file a motion to receive the hearing. See K.S.A. 22-2902(1) ("The state and every person charged with a felony shall have a right to a preliminary examination before a magistrate."). Here, Allen only received a hearing *because* he filed a motion.

Simply because two different kinds of hearings (a hearing on a motion to dismiss and a preliminary hearing) may end in the same result (dismissal of the charge) does not make them the same type of hearing. Although the State is correct that there is no statutory authority to hold a preliminary examination in a misdemeanor case, we find no support for its assertion that the hearing in this case was, in fact, a preliminary examination.

b. *The district court erred by holding an evidentiary hearing to decide the merits of factual issues presented in Allen's motion to dismiss*

Even if not construed as a de facto preliminary examination, the State contends that the district court had no authority to conduct an evidentiary hearing on a pretrial motion to dismiss for lack of sufficient evidence in a misdemeanor case. We agree.

A defendant may certainly file a motion to dismiss as provided under K.S.A. 22-3208. Subsection (1) of K.S.A. 22-3208 provides that defenses and objections raised before trial that previously could have been brought by one of several now-abolished filings shall be raised only by motion to dismiss or to grant appropriate relief. Subsection (2) further clarifies that "[a]ny defense or objection which is capable of determination without the trial of the general issue may be raised before trial by motion." K.S.A. 22-3208(2). Subsection (3) states that defenses and objections based on defects

in the institution of the prosecution or in the complaint, information, or indictment other than a failure to show jurisdiction or charge a crime may be raised only by motion before trial, otherwise they are waived. In addition, a district court may hold a hearing on such a motion to dismiss under Kansas Supreme Court Rule 133(c)(2)(A) (2012 Kan. Ct. R. Annot. 238), which allows a district court to set a motion for hearing.

Although the district court here was authorized to hold a hearing on Allen's motion, a pretrial evidentiary hearing under the facts presented here was improper. Given the specific facts presented in this particular case, the issue regarding sufficiency of the evidence to prove vehicular homicide was not a question of law, but a question of fact for decision by a jury. See *State v. Truskett*, 85 Kan. 804, 811, 118 P. 1047 (1911). Specifically, the issue presented here was whether the defendant's actions constituted a "material deviation from the standard of care which a reasonable person would observe under the same circumstances." K.S.A. 21-3405. Because this test depends on the "circumstances" of the case, it is a fact inquiry. Thus, the motion was not authorized under K.S.A. 22-3208(2) because—given the particular facts presented here— the matter was not capable of determination without a trial by a jury.

Although our conclusion in this regard is limited to the particular facts of this case, we have found no other Kansas case where an evidentiary hearing was held on an issue of fact raised by a motion to dismiss in a misdemeanor case. The cases cited by Allen are inapposite or not directly on point. In most of these cases, the appellants claimed there was insufficient evidence to establish the probable cause necessary to support a warrantless arrest, a complaint filed by the State, or a supporting affidavit. See *State v. Breazeale*, 238 Kan. 714, 726-27, 714 P.2d 1356, *cert. denied* 479 U.S. 846 (1986) (finding omissions from affidavit were not material and trial court did not err in denying defendant's request for evidentiary hearing); *State v. Abu-Isba*, 235 Kan. 851, 854-55, 685 P.2d 856 (1984) (finding affidavit establishes probable cause); *Wilbanks v. State*, 224 Kan. 66, 74, 579 P.2d 132 (1978) (holding Idaho complaint lacked information sufficient to·support finding of prob-

able cause), *overruled on other grounds by In re Habeas Corpus Application of Danko*, 240 Kan. 431, 731 P.2d 240 (1987); *State v. Meza*, No. 106,006, 2012 WL 309322, at *1 (Kan. App. 2012) (unpublished opinion) (district court correctly dismissed charge for lack of probable cause).

Several others cases challenged the sufficiency of the evidence at a preliminary hearing. See, *e.g.*, *State v. Seabury*, 267 Kan. 431, 432, 434, 985 P.2d 1162 (1999) (construing defendant's motion following preliminary examination arguing facts did not support crime as one challenging sufficiency of complaint); *State v. Crawford*, No. 103,524, 2011 WL 135033, at *2-4 (Kan. App. 2011) (unpublished opinion) (affirming district court's granting defendant's motion to dismiss following preliminary examination for lack of probable cause after excluding suppressed evidence).

The rest of the cases involved facts that were distinguishable or presented in procedural postures different from this case. See *State v. Rice*, 264 Kan. 232, 233, 955 P.2d 1258 (1998) (affirming district court's dismissal of case after granting defendant's *motion to suppress evidence* and being told there was no other evidence against defendant); *State v. Polson*, 225 Kan. 821, 821-22, 594 P.2d 235 (1979) (finding based on *stipulated facts* and court's legal determination of statutory elements of crime that district court erred in dismissing defendant's motion to dismiss complaint for failure to state a crime); *City of Wichita v. Goad*, No. 93,903, 2006 WL 1816309, at *2 (Kan. App. 2006) (unpublished opinion) (finding district court did not have legal authority to dismiss charges "without a full evidentiary record" where district court dismissed the charges upon hearing on defendant's *motion to dismiss complaint for failing to allege a crime*).

Based on the discussion above, we conclude the district court erred by holding an evidentiary hearing on Allen's pretrial motion to dismiss for lack of sufficient evidence because—under the particular facts of this case—the motion presented a question of fact that should have gone to a jury to decide. But even if it had been proper in this case for the district court to hold an evidentiary hearing to determine whether there was sufficient evidence from which a jury could find beyond a reasonable doubt that Allen ma-

terially deviated from the applicable standard of care, the district court's decision to dismiss the case was made in error.

### 2. *The district court's decision to dismiss the case*

The State claims the district court erred in granting Allen's motion to dismiss for lack of sufficient evidence because (1) it applied the wrong standard of proof for vehicular homicide and (2) the State provided sufficient evidence that Allen committed vehicular homicide.

### a. *The district court applied the wrong legal standard*

The State contends that the district court erred by requiring it to provide evidence of a traffic infraction plus an aggravating factor. It asserts that the district court incorrectly interpreted *State v. Krovvidi*, 274 Kan. 1059, 58 P.3d 687 (2002), to impose a standard of proof not supported by Kansas law. Instead, the State claims the correct standard is whether under the totality of the circumstances the defendant's conduct constitutes a material deviation.

Interpretation of a statute is a question of law over which appellate courts have unlimited review. *Dale*, 293 Kan. at 662.

Vehicular homicide is defined in K.S.A. 21-3405:

"Vehicular homicide is the unintentional killing of a human being committed by the operation of an automobile, airplane, motor boat or other motor vehicle in a manner which creates an unreasonable risk of injury to the person or property of another and which constitutes a material deviation from the standard of care which a reasonable person would observe under the same circumstances."

In *Krovvidi*, our Supreme Court examined what constitutes a "material deviation" under this statute. In that case, Krovvidi was charged with vehicular homicide after failing to stop at a red light at an intersection and causing an accident resulting in the death of the other driver. In considering Krovvidi's posttrial motion for judgment of acquittal, the district court found the running of the red light, with no other indications of recklessness or impairment, satisfied the vehicular homicide statute's required element of a "material deviation" from the standard of care which a reasonable person would observe under the same circumstances.

The Kansas Supreme Court began by noting that Kansas formerly had a negligent homicide statute which criminalized ordinary

negligence by a driver that proximately caused the death of another, but this statute was repealed and replaced with the vehicular homicide statute. The court stated that vehicular homicide thus requires "something more than simple or ordinary negligence." 274 Kan. at 1067. It went on to define the current standard: " 'It is now established that the "material deviation" required for a conviction under [K.S.A.] 21-3405 requires something more than ordinary or simple negligence yet something less than gross and wanton negligence.' " 274 Kan. at 1068. In addition, it emphasized that "the manner in which a defendant operates his or her vehicle under the *totality of the circumstances* presented is the proper focus of an inquiry concerning the element of a 'material deviation' ":

" ' "Identical conduct under different circumstances may result in no criminal responsibility, vehicular homicide, or involuntary manslaughter. For example, let us assume that a person is operating his [or her] vehicle at 60 miles per hour on dry pavements on a sunny day with little traffic at 4:00 on a Tuesday afternoon and he [or she] strikes and kills a pedestrian crossing the road. This same set of facts could be (a) no responsibility if it occurred in a remote, sparsely populated area; (b) vehicular homicide if it occurred in a residential area; and (c) involuntary manslaughter in a posted school zone. Even within these classes additional facts would have to be supplied before a definitive statement could be made.' " " 274 Kan. at 1068-69 (quoting *State v. Randol*, 226 Kan. 347, 353, 597 P.2d 672 [1979]).

The court found that Krovvidi had not been drinking and was not under the influence of any drug; his passengers did not indicate they thought his driving was reckless; and he was not speeding. It therefore concluded that Krovvidi's act of inattentively running a red light without more did not meet the material deviation element required for conviction of vehicular homicide, holding that "[a]bsent additional aggravating factors, we conclude that his conduct does not amount to the material deviation required." 274 Kan. at 1075.

In this case, the district court granted Allen's motion to dismiss based on insufficient evidence of an aggravating factor independent of the traffic infraction as required to sustain a conviction for vehicular homicide under *Krovvidi*. The State argues that the district court incorrectly interpreted *Krovvidi* to require the State to establish an aggravating factor independent of a traffic infraction

in order to prove vehicular homicide when the holding in *Krovvidi* requires the State to establish only that the defendant's conduct constitutes a material deviation under the totality of the circumstances.

Although, as Allen submits, the court used the phrase "aggravating factors" several times in its opinion, the *Krovvidi* court also specifically stated that it was "unable to set forth a bright line rule as to what conduct amounts to a material deviation as set forth in K.S.A. 21-3405" and again emphasized that the proper focus of an inquiry on material deviation was the manner in which a defendant operates his or her vehicle under the totality of the circumstances presented. 274 Kan. at 1075.

The *Krovvidi* court rightly eschewed imposing any bright-line rule or a requirement to establish an aggravating factor *independent* of a traffic infraction because, as the above quote from the *Randol* case indicates, one could easily imagine conduct qualifying as a simple traffic infraction that would *simultaneously* constitute a material deviation sufficient for vehicular homicide without any additional aggravating factor—passing a stopped school bus with its lights flashing under K.S.A. 8-1556, for example. Thus, the district court erred by requiring the State to provide evidence of an aggravating factor *independent* of a traffic infraction instead of a material deviation under the totality of the circumstances.

b. *The State presented sufficient evidence to survive a motion to dismiss*

The State contends that it presented sufficient evidence at the evidentiary hearing to establish a submissible case of vehicular homicide and proceed to trial. We agree.

The standard of review on this issue has not been determined, given that there has never been a case involving a pretrial evidentiary hearing on a motion to dismiss for lack of sufficient evidence to sustain a misdemeanor charge, as discussed above. However, the standard for a motion to dismiss based on insufficient evidence from *State v. Garcia*, 282 Kan. 252, 259-60, 144 P.3d 684 (2006), seems most apt. Although in the context of denying a motion to dismiss as opposed to granting it, the *Garcia* case provides that

"review of a trial court's denial of a motion to dismiss for insufficient evidence asks whether review of all the evidence, viewed in the light most favorable to the prosecution, convinces the appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." 282 Kan. at 259-60 (citing *State v. Cohen*, 229 Kan. 65, 71, 622 P.2d 1002 [1981]).

The *Krovvidi* court, in dicta, identified the following examples of conduct that could amount to a material deviation under K.S.A. 21-3405: drinking, drug use, warnings from a passenger, reckless driving, accelerating while approaching an intersection, and speeding. 274 Kan. at 1075. A panel of this court subsequently noted that this list was "certainly not intended to be exhaustive." *State v. Carter*, No. 101,510, 2010 WL 174062, at *5 (Kan. App. 2010) (unpublished opinion), *rev. denied* 291 Kan. 913 (2011). Likewise, the Kansas Supreme Court identified examples of conduct that might constitute reckless driving in *State v. Remmers*, 278 Kan. 598, 602, 102 P.3d 433 (2004), when it noted that the evidence in the case before it showed that the defendant was driving on a rural road on a clear day and there was no evidence of "speeding, *swerving*, driving erratically, or leaving the scene of the accident." (Emphasis added.) Although *Remmers* involved a different offense, it stands to reason that if swerving constitutes reckless driving, it also qualifies as a material deviation under the lesser negligence standard required by K.S.A. 21-3405. Other cases also provide examples of conduct or circumstances that Kansas courts have found to be a material deviation for vehicular homicide. For example, in *State v. Trcka*, 20 Kan. App. 2d 84, 884 P.2d 434 (1994), the Court of Appeals held that a professional semi-truck driver travelling 50 to 55 miles per hour in a 45 mile-per-hour zone who failed to see a clearly marked construction vehicle that was visible for a quarter of a mile constituted a material deviation from the standard of care. The *Krovvidi* court cited this case in its analysis and emphasized that the inattentiveness of the driver in *Trcka* was prolonged for more than a quarter of a mile. 274 Kan. at 1072. In *State v. Miser*, No. 99,274, 2009 WL 1691940, at *10 (Kan. App. 2009) (unpublished opinion), *rev. denied* 290 Kan. 1100 (2010), the court distinguished the case from *Krovvidi*, finding Miser's deviation from

the standard of care included far more than running a single red light, including deliberately ignoring large, orange construction signs and a flag man before the construction zone as well as the *defendant's failure to attempt to slow down* as he approached a line of stopped cars on the highway.

Unlike *Krovvidi*, we find the evidence presented by the State at the evidentiary hearing in this case could establish a deviation from the standard of care greater than just inattentive driving. Although there was no evidence of alcohol or drug use, speeding, or ignoring warnings in this case as is often found in vehicular homicide cases, the State presented evidence of Allen's prolonged inattentiveness, like in *Trcka*. See, *e.g.*, *State v. Burrell*, 237 Kan. 303, 304, 699 P.2d 499 (1985) (finding defendant guilty of vehicular homicide where he accelerated towards a stop sign, ignored a passenger's warning, and drank beer while driving); *State v. Doub*, 32 Kan. App. 2d 1087, 1088-89, 95 P.2d 116 (finding defendant guilty of vehicular homicide where defendant also charged with intoxication and drug use), *rev. denied* 278 Kan. 848 (2004). For example, Allen told Trooper Olberding that he was looking at a boat on a lake prior to the accident. In addition, Faith testified that she saw Allen swerve across the center line five times in roughly 6 miles of travel in normal weather conditions during a busy time on a narrow, hilly, and winding road that she felt required more caution than other roads. Olberding's report stated that Allen's car showed no braking prior to impact, and Faith testified that Allen's car did not slow down prior to the accident, like in *Miser*. Most importantly, Faith testified that Allen's car crossed the center line for at least 7 or 8 seconds immediately prior to the accident, and Olberding's report stated that the collision occurred entirely in the southbound lane of travel.

The facts presented by the State at the evidentiary hearing provide sufficient evidence from which a jury could find a material deviation from the standard of care greater than the momentary inattentiveness found not to be a material deviation in *Krovvidi*. A driver's swerving across the center line for at least 7 seconds with no apparent provocation and striking another car head on, without attempting to brake, while completely in the opposite lane of traffic

could certainly be found by a rational factfinder to be more than ordinary or simple negligence under the totality of the circumstances.

Based on this evidence, at least one rational factfinder could have found Allen guilty beyond a reasonable doubt of vehicular homicide. Thus, the district court erred in granting Allen's motion to dismiss because the State presented sufficient evidence to establish that Allen's actions could be found to be a material deviation from the standard of care which a reasonable person would observe under the totality of the circumstances under K.S.A. 21-3405.

Reversed and remanded.