NOT DESIGNATED FOR PUBLICATION

No. 128,251

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

JOHN DAVID CLIFTON,
*Appellee*.

MEMORANDUM OPINION

Appeal from Labette District Court; STEVEN A. STOCKARD, judge. Submitted without oral argument. Opinion filed August 15, 2025. Affirmed in part, reversed in part, and remanded with directions.

*Alan Brereton*, county attorney, and *Kris W. Kobach*, attorney general, for appellant.

*Kyle M. Fleming*, of The Fleming Law Firm, of Pittsburg, for appellee.

Before CLINE, P.J., MALONE and PICKERING, JJ.

PER CURIAM:  The State appeals the district court's order dismissing its criminal complaint against John David Clifton after a preliminary examination. The complaint charged Clifton with committing both felony and misdemeanor drug offenses. The district court found that the State presented insufficient evidence to bind Clifton over for trial on any felony and dismissed the case without prejudice. For reasons explained below, we affirm the district court's dismissal of the felony counts but reverse its dismissal of the misdemeanor counts and remand for further proceedings.

1

FACTUAL AND PROCEDURAL BACKGROUND

On March 6, 2024, Oswego Police Department officers executed a search warrant at a residence in Oswego. They found Clifton and others inside the residence along with methamphetamine and drug paraphernalia. The State charged Clifton with possession with intent to distribute a controlled substance, possession of drug paraphernalia for distribution, and unlawful manufacture, distribution, cultivation, or possession of controlled substances using a communication facility—all felonies—and possession of drug paraphernalia for personal use and possession of marijuana—misdemeanors.

The district court held a preliminary examination on September 25, 2024. The State called a single witness, Ethan Gurnee, one of the police officers who executed the search warrant. Gurnee testified that he had pulled the trash outside the residence on two occasions and found drug paraphernalia with a burned residue on it that "came back [from field testing] for suspected methamphetamine." Based on those findings, Gurnee applied for a search warrant on the residence.

Upon executing the search warrant, Gurnee found several people inside the house including Clifton. Clifton was in the kitchen and the others were in the living room. Gurnee described finding "illegal substances" in the living room hidden between couch cushions, drug paraphernalia found in a backpack next to the couch, and drug paraphernalia found in the kitchen and a bedroom. The drug paraphernalia in the kitchen was found in a drawer and the trash can and included pipes and aluminum foil with residue on it. The substance found in the living room field tested positive for methamphetamine. The search also uncovered what Gurnee suspected to be a small amount of loose marijuana and THC wax, though he did not recall where those items were found. The suspected marijuana was not field tested.

The officers also found mail naming either Lisa Rowe or Johnny Polk—Lisa Rowe being one of the individuals found in the residence during the search. None of the mail named Clifton. The search did not turn up any identifying documentation like driver's licenses or social security cards. Gurnee was unable to determine who the methamphetamine belonged to. Gurnee did not talk to Clifton during the search and instead another officer spoke with him. The substance of that conversation was not introduced at the hearing.

On cross-examination, Gurnee testified that during one of the trash pull searches before executing the warrant he found an insurance card belonging to Lisa Rowe and otherwise found nothing identifying Clifton. When asked if he had found evidence identifying Clifton as a resident of the home, Gurnee responded, "No."

The backpack in the living room had the name "Jay Shultz" on it. Gurnee was unsure who that was. Nothing in the backpack was found referencing Clifton. The search also turned up several cellphones. Gurnee searched through one and found nothing in the texts identifying Clifton. When asked again whether he found any evidence that Clifton lived in the house, Gurnee responded that none was found. Gurnee believed the residents of the house to be Lisa Rowe, Victor Polk, and Tyler Polk.

When asked whether any drugs were found on Clifton, Gurnee responded, "No." Clifton's counsel then asked whether there was any evidence that Clifton had drugs on his person or that he was involved in the distribution of an illegal substance. Gurnee testified there was no such evidence. Gurnee testified that he found no evidence tying any of the cellphones in the house to Clifton.

After Gurnee's testimony, the State rested. As soon as the State rested, the district court dismissed the case from the bench. The district court explained:

3

"Mr. Fleming asked the question, other than his mere present in the house, is there anything else tying him to the drugs, the officer said no. Case law clearly says that mere presence or access to the drugs standing alone is insufficient to demonstrate the possession, absent some other incriminating circumstance.

"There is nothing presented today that ties him to the drugs, zero. And so his mere presence there is not enough. And for those reasons this case is dismissed without prejudice.

"If there is something more that you want to present, you can refile and do this again, but today you presented nothing so the case is dismissed."

The district court later filed an order finding "there was insufficient evidence to bind [Clifton] over on any felony" and dismissing the case without prejudice. The State timely appealed the district court's judgment.

ANALYSIS

The State claims the district court erred in dismissing the case after the preliminary examination for lack of probable cause. The State divides its argument into four subparts: The district court used the wrong standard to determine possession; it disregarded all the evidence presented at the hearing; it improperly relied on a lay witness' legal conclusion that the evidence was insufficient; and it erred by dismissing the misdemeanor charges together with the felony charges after the preliminary examination. Clifton counters that the district court correctly dismissed the case, though he does not specifically address each of the State's sub-issues supporting its claim. An appellate court exercises unlimited review over the district court's probable cause finding at a preliminary hearing. See *State v. Rozell*, 315 Kan. 295, 305, 508 P.3d 358 (2022).

Under K.S.A. 22-2902(a), "every person charged with a felony shall have a right to a preliminary examination before a magistrate, unless such charge has been issued as a result of an indictment by a grand jury." The magistrate shall then bind the defendant

4

over for trial if the evidence shows that (1) a felony has been committed and (2) there is probable cause to believe that the accused committed the crime. K.S.A. 22-2902(c); *State v. Washington*, 293 Kan. 732, 733, 268 P.3d 475 (2012). If the magistrate finds there is no probable cause to believe the defendant committed the charged crime, then the magistrate "shall discharge the defendant." K.S.A. 22-2902(c).

"'Probable cause at a preliminary examination signifies evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt.'" *Rozell*, 315 Kan. at 305. To determine whether the State has met this burden, the magistrate does not pass on the credibility of the witnesses, and when the evidence conflicts, the magistrate must accept the version most favorable to the State. 315 Kan. at 305. It is not the province of the district court "to determine the wisdom of the decision to file charges or to determine whether the possibility of a conviction is likely or remote." *State v. Anderson*, 270 Kan. 68, 71, 12 P.3d 883 (2000).

First, the State argues that the district court used the wrong legal standard for "possession." The State points to K.S.A. 21-5111(v), which defines possession as "knowingly having joint or exclusive control over an item or knowingly keeping some item in a place where the person has some measure of access and right of control." The State claims it presented enough evidence to support that definition where Clifton was found in the house with controlled substances, where he was the sole occupant in the kitchen where drug paraphernalia was found, and where the paraphernalia items were similar to those found in the trash pulls that supported the search warrant. But none of that evidence shows that Clifton knowingly had joint or exclusive control over these items or placed them where he had some measure of access and right of control.

The Kansas Supreme Court has stated that "when a defendant is in *nonexclusive* possession of the premises on which illegal drugs are found, the mere presence of or access to the drugs, standing alone, is insufficient to demonstrate possession absent other

5

incriminating circumstances. [Citation omitted.]" *State v. Rosa*, 304 Kan. 429, 434, 371 P.3d 915 (2016). Relevant factors to consider when a house is not exclusively occupied by the defendant include the "'defendant's previous participation in the sale of drugs, use of narcotics, proximity to the area where drugs are found, and the fact the drugs were found in plain view.' [Citation omitted.]" 304 Kan. at 434.

The State discusses this court's decision in *State v. Beaver*, 41 Kan. App. 2d 124, 200 P.3d 490 (2009). Beaver was present in a home when a search warrant was executed. During the search, Beaver was found near the kitchen table, which had on it a small scale, money, and bags of a crystal substance. A field test of the substances came back positive for methamphetamine. The State charged Beaver with one count of felony possession of methamphetamine with the intent to sell, deliver, or distribute, and one count each of felony and misdemeanor possession of drug paraphernalia. At the preliminary examination, the State presented evidence that the items on the table were in clear view of Beaver. The officers conducting the search found no evidence that Beaver was a resident of the house. No mail or other documents were found in Beaver's name, but the evidence showed Beaver had been a frequent visitor of the home.

The magistrate found probable cause to believe that Beaver committed the felonies charged and bound him over for trial. Beaver later moved to dismiss on the ground that he never possessed any of the methamphetamine or drug paraphernalia. The district court agreed and dismissed the felony counts by finding the State presented no evidence to establish possession other than Beaver's presence in the home. The district court found that Beaver's proximity alone to the methamphetamine or drug paraphernalia was insufficient evidence to show possession. 41 Kan. App. 2d at 126-27.

On appeal, this court considered the evidence and found a lack of probable cause to bind Beaver over on the felony counts. Although Beaver was located close to the bulk of the methamphetamine and drug paraphernalia, that alone was not enough to support

6

probable cause where there was no evidence that he was a resident of the home, that he had personal belongings in the home, or that he otherwise had any connection with the home other than as a social guest. Nor was there any evidence that Beaver had participated in the sale of drugs or exhibited any suspicious or incriminating behavior during the search. Further, although Beaver was found in the kitchen near the drugs and drug paraphernalia, there was no evidence that the kitchen was used exclusively for packaging, selling, delivering, or distributing methamphetamine. As a result, this court affirmed the district court's dismissal of the felony charges. 41 Kan. App. 2d at 131-32.

Clifton's case is similar to *Beaver*. Clifton was found in the kitchen where drug paraphernalia was found in a drawer and in the trash can. There was no evidence that Clifton resided in the home or had any connection to the home. Clifton's name was not on any mail, and there was no evidence that his personal belongings were found in the home. Gurnee testified that he did not believe Clifton was a resident. This case presents even fewer facts in the State's favor than in *Beaver* because the drug evidence found in that case was more in the open than the evidence found here. And the evidence showed that Beaver was a frequent visitor of the home, but the State presented no evidence that Clifton had visited the home. The only evidence the State presented tying Clifton to any drugs or drug paraphernalia was his presence in the home and his proximity to the drug paraphernalia in the kitchen. As in *Beaver*, that evidence is insufficient to establish probable cause that Clifton possessed the drugs and drug paraphernalia. And as Clifton points out in his brief, the State presented no evidence that he used a communication facility to support Count 3 of the complaint.

Second, the State argues that the district court disregarded all evidence produced at the preliminary examination because it used phrases like "today you presented nothing" when finding the State failed to establish probable cause. The hearing transcript refutes the State's claim. The district court clarified that the State presented no evidence tying Clifton to the drugs other than his presence in the house immediately before saying,

7

"but today you presented nothing so the case is dismissed." Thus, the record shows the district court intended the phrase to mean the State presented insufficient evidence tying Clifton to the drugs, not that the State presented no evidence at all.

Third, the State challenges how the district court pointed out that Gurnee was asked whether any evidence other than Clifton's presence in the house tied him to the drugs and Gurnee responded there was no evidence. The State claims the district court improperly based its decision on the legal conclusion of a lay witness. But the record contradicts this claim. The district court heard ample evidence to find that the State presented no evidence tying Clifton to the drugs other than his presence in the home. The district court did not rely solely on Gurnee's opinion of the evidence. Rather, Gurnee's opinion merely highlighted and aptly summarized the lack of evidence the State presented to establish probable cause that Clifton committed the charged crimes.

Finally, the State claims the district court erred in dismissing the entire case and not just the felony charges. The State is correct. Under K.S.A. 22-2902(a), a preliminary examination only addresses whether to bind a defendant over for trial on felony charges. K.S.A. 22-3202(2) provides that when separate felony and misdemeanor counts are charged in the same complaint, but the defendant is not bound over on the felony counts, then "said defendant shall be tried on the misdemeanor count in the same manner as other prosecutions for misdemeanors." This court has held that there is no statutory authority for a preliminary examination in misdemeanor cases and such hearings only apply to felony crimes. *State v. Allen*, 49 Kan. App. 2d 162, 173-74, 305 P.3d 702 (2013). Clifton does not even respond to the State's argument about the misdemeanor charges. Thus, we affirm the district court's order dismissing the felony counts without prejudice but reverse its order dismissing the misdemeanor counts and remand the case for further proceedings.

Affirmed in part, reversed in part, and remanded with directions.

8