No. 40,819

THE STATE OF KANSAS, *Appellee*, v. H. B. TURNER, ARTHUR L. SWEENEY, P. C. COPELAND and PETER L. MENSER, *Appellants*.

(328 P. 2d 733)

Opinion filed August 1, 1958.

*Albert M. Ross,* of Kansas City, and *Marvin E. Lewis,* of San Francisco, California, argued the cause, and *Joseph Cohen, Charles S. Schnider, John E. Shamberg* and *Joseph P. Jenkins,* all of Kansas City, and *Martin E. Field, Sidney F. DeGoff* and *Pierce N. Stein,* all of San Francisco, California, were with them on the briefs for the appellants.

*James P. Davis,* Assistant County Attorney, *William H. Towers,* of Kansas City, and *Prentice A. Townsend,* of Topeka, argued the cause, and *John Anderson, Jr.,* Attorney General, and *Donald E. Martin,* County Attorney, were with them on the briefs for the appellee.

The opinion of the court was delivered by

PRICE, J.: Defendants were found guilty by a jury of violating the provisions of what now appears as G. S. 1957 Supp., 75-427. Each was ordered to pay a fine of $5.00 and the costs of the action, and this appeal followed.

Due to the nature of the case, it will be necessary to set out or summarize the provisions of Chapter 397, Laws of 1953, relating to the registration of names and insignia of certain organizations, now appearing as G. S. 1957 Supp., 75-421 to 427, inclusive. Unless otherwise indicated, all references are to G. S. 1957 Supp.

75-421 provides:

"Any association, lodge, order, fraternal society, beneficial association, or fraternal and beneficial society or association, historical, military or veterans' organization, labor union, foundation, federation, or any other society, organization or association, degree, branch, subordinate lodge or auxiliary thereof, whether incorporated or unincorporated, may register in the office of the secretary of state, a facsimile, duplicate or description of its name, badge, button, decoration, charm, emblem, rosette or other insignia, and may by reregistration, alter or cancel the same."

75-422 provides:

"Application for such registration shall be made by the chief officer or officers of said association, lodge, order, fraternal society, beneficial association or fraternal and beneficial society or association, historical, military or veterans' organization, labor union, foundation, federation, or any other society, organization or association, degree, branch, subordinate lodge or auxiliary thereof, upon blanks to be provided by the secretary of state, and such registration shall be for the use, benefit and on behalf of all associations, degrees, branches, subordinate lodges and auxiliaries of said association, lodge, order, fraternal society, beneficial association, or fraternal and beneficial society or association,

historical, military or veterans' organization, labor union, foundation, federation, or any other society, organization or association, degree, branch, subordinate lodge or auxiliary thereof and the individual members and those who thereafter become members thereof throughout the state of Kansas."

75-423 provides that the secretary of state shall keep a properly indexed record of the registrations provided for, which record shall also show any altered or canceled registration.

75-424 provides:

"No registration shall be granted to any association, lodge, order, fraternal society, beneficial association, or fraternal and beneficial society or association, historical, military, or veterans' organization, labor union, foundation, federation, or any other society, organization or association, degree, branch, subordinate lodge or auxiliary thereof, having a name, badge, button, decoration, charm, emblem, rosette or other insignia similar to, imitating or so nearly resembling as to be calculated to deceive, any other name, badge, button, decoration, charm, emblem, rosette or other insignia whatsoever, already registered pursuant to the provisions of this act: *Provided,* That nothing contained in this act shall deny the use of any emblem, name, badge, button, decoration, charm, rosette or other insignia to any organization which has been peaceably using the same for a period of twenty-five years or more prior to the date of this enactment."

75-425 provides that upon granting registration the secretary of state shall issue his certificate to the petitioners showing that a search of his records fails to disclose any conflict between the name, badge, button, decoration, charm, emblem, rosette or other insignia proposed to be registered, and any other name, badge, button, decoration, charm, emblem, rosette or other insignia registered pursuant thereto.

75-426 provides for the fee to be charged by the secretary of state for each registration made pursuant to the act.

75-427 provides:

"Any person who shall willfully wear, exhibit, display, or use for any purpose, the badge, button, decoration, charm, emblem, rosette or other insignia of any such association or organization herein mentioned, duly registered hereunder, unless he or she shall be entitled to use and wear the same under the constitution and bylaws, rules and regulations of such association and organization, shall be guilty of a misdemeanor, and upon conviction shall be punished as provided in section 21-1308 of the General Statutes of 1949 and any amendments thereto."

G. S. 1949, 21-1308 (enacted in 1903) provides:

"Any person who shall willfully wear the badge, insignia, button, uniform or other emblem of the Independent Order of Odd Fellows, the Ancient, Free and Accepted Masons, the Knights of Pythias, or other secret and fraternal

beneficiary societies, or who shall use the same to obtain aid or assistance within this state, unless he shall be entitled to use and wear the same under the laws, rules and regulations of the grand lodges of said orders in the state of Kansas, shall be guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine not to exceed twenty-five dollars, or by imprisonment not to exceed thirty days, or by both such fine and imprisonment."

The information upon which defendants were tried charged:

". . . that at said County of Wyandotte, State of Kansas, within the jurisdiction of this Court, on or about the 1st day of October, 1955, in Kansas City, Wyandotte County, Kansas, H. B. Turner, Arthur L. Sweeney, P. C. Copeland and Peter L. Menser, did wilfully and unlawfully wear, exhibit, display and use for the purpose of misleading and confusing the public, a name, badge, button, decoration, charm, emblem, rosette and other insignia of the Prince Hall Grand Lodge of Kansas and Jurisdiction F. and A. M., an incorporated fraternal society of Kansas, this same having already been duly registered pursuant to the provisions of Sections 75-421 and 75-427 inclusive, G. S. of Kan. Supp. 1953; that the said defendants, H. B. Turner, Arthur L. Sweeney, P. C. Copeland and Peter L. Menser, and the Masonic organization to which they belong has not been peaceably using the emblem, name, badge, button, decoration, charm, rosette, or other insignia for a period of twenty-five (25) years or more, and all of said unlawful actions done as aforesaid, while the said H. B. Turner, Arthur L. Sweeney, P. C. Copeland and Peter L. Menser were not members of nor entitled to use and wear the same, under the Constitution, and by-laws, rules and regulations of the said Prince Hall Grand Lodge of Kansas and Jurisdiction F. and A. M., an incorporated fraternal society of Kansas, contrary to the statute in such case made and provided."

At the close of the state's evidence the trial court sustained defendants' motion for discharge insofar as their use of a "name" similar to the Prince Hall organization was concerned. Defendants introduced their evidence and the case was submitted to the jury on the question whether defendants had violated the provisions of the statute by "wearing and displaying a Masonic emblem and apron which had been duly registered by the Prince Hall Grand Lodge in accordance with said statutes."

As stated, a verdict of guilty was returned. Defendants filed a motion for a new trial containing nineteen grounds, most of which had to do with alleged errors and irregularities during the trial. This motion was overruled and sentence, as heretofore mentioned, was imposed.

Defendants' notice of appeal reads that they ". . . have and do hereby appeal to the Supreme Court of Kansas from the judgment rendered on a verdict returned by a jury in the above entitled action, on the 22nd day of May, 1957, whereby it was by the District Court of Wyandotte County, Kansas, decided, ordered and

adjudged that defendants were guilty of a violation of Sections 75-421 to 75-427 inclusive, G. S. Supplement 1953, and whereby the court fined $5.00 each and costs."

Defendants assert nine specifications of error, one of which is that the court erred in overruling their motion for a new trial.

It is to be noted, however, that they did not appeal from the order overruling the motion for a new trial. Therefore, despite their assignment of that order as error, alleged errors and irregularities occurring during the trial, that is, trial errors, are not reviewable. Application of this rule has been invoked under varying facts and circumstances. The most frequent instance is where an appeal is taken from the order overruling a motion for a new trial, but an appellant neglects to assign such ruling as error in his specifications of error. Here we have just the reverse, but the end result is the same and amounts simply to this—matters specified as error, in order to be reviewable, must be within the purview of those matters contained in the notice of appeal, and when an appellant seeks to have this court review alleged trial errors he must appeal from the order overruling his motion for a new trial, and, in addition, must assign such ruling as error. We cite but a few of our decisions on the subject—*Hardman Lumber Co. v. Spitznaugle,* 130 Kan. 346, 286 Pac. 235; *In re Estate of Young,* 169 Kan. 20, 217 P. 2d 269; *Crowder v. Lindbergh,* 175 Kan. 671, 265 P. 2d 851; *McCarty v. Kansas-Nebraska Natural Gas Co.,* 176 Kan. 386, 389, 271 P. 2d 264; *Baker v. Maguire's, Inc.,* 176 Kan. 579, 580, 272 P. 2d 739; *State, ex rel., v. Miller,* 177 Kan. 324, 279 P. 2d 223, 52 A. L. R. 2d 691, and *King v. King,* 183 Kan. 406, 408, 327 P. 2d 865. The rule is equally applicable to appeals in criminal cases and thus precludes our review of alleged trial errors in the case before us.

Application of the rule does not, however, prevent a review of pure questions of law. (See *State, ex rel., v. Miller,* supra, at pp. 329, 330.)

At the close of all of the evidence defendants moved for discharge on several grounds, one of which was that "the law under which the prosecution in this case is had is violative of the rights of the defendants under the Constitution of the United States and the Fourteenth Amendment thereof." The same general contention was included in the motion for a new trial and the specifications of error.

Defendants' brief likewise deals in generalities, but, if we understand their position correctly, it is to the effect the statutes in ques-

tion deprive defendants' organization of its property without due process of law and amount to an unlawful exercise of the police power of the state. Some reference also is made to the first amendment to the federal constitution. (See *Sester v. Belvue Drainage District*, 162 Kan. 1, 6, 173 P. 2d 619, in which it was said that the first ten amendments to the federal constitution are limitations only on the power of the federal government and do not apply to the state.)

Be that as it may, we nevertheless will discuss briefly the apparent contention of defendants insofar as section 1 of the fourteenth amendment to the federal constitution is concerned.

The case of *Hammer v. State* (1909), 173 Ind. 199, 89 N. E. 850, also reported at 24 L. R. A. (NS) 795, 140 Am. St. Rep. 248, 21 Ann. Cas. 1034, is perhaps the leading case on the subject. There the defendant was charged with unlawfully wearing the badge and emblem adopted by an incorporated secret society of the state, he at the time not being a member of the society. He was convicted and fined. On appeal to the Indiana supreme court it was contended, among other things, that the law under which the prosecution was had was violative of the fourteenth amendment to the constitution. In rejecting this contention it was held that no constitutional privileges or immunities are denied a citizen by a statute forbidding him to wear the badge of a secret society of which he is not a member, nor are exclusive privileges unlawfully conferred by such legislation, and that the legislature may under its police power pass such legislation. In the course of the opinion it was said:

"It can scarcely be urged that the right to wear a badge or emblem of a society of which a person is not a member is a right conferred by the Constitution or laws of the United States. The statute confers no right, exemption or privilege on any class or individual to do a thing denied to others as of common right, except it may be said negatively to authorize one who is a member of the society to wear a badge if he chooses, but prevents all who are not members from doing so. The Constitution and laws of the United States do not furnish, nor guarantee such right, nor can a person under them claim that right as a privilege, or that he shall be immune from regulation by the State, so far as the federal Constitution is concerned. It is simply the denial by the State, under its police power, of a claim of a right by appellant. It is the negation of a claim, and is a matter that concerns the State only." (p. 203.)

". . . It is a matter of common knowledge that the membership in most, if not all, societies or organizations, whether secret or otherwise, is the result of fitness and selection, which give members standing and character, at least

among their fellows, and to a greater or lesser degree with the public and he who wears a badge or emblem of the order or society without being a member holds himself out to the public and to actual members as guilty of a false personation. It is of itself a deceit and a false pretense, and its object could be nothing else than deception, with possibly ulterior motives. . . . and the object of the statute was the prevention of this species of fraud, not only in the interest of the members of the society, but of the public at large, who might be deceived through their good opinion of the society and its members. It is a police regulation, pure and simple, upon grounds of public policy, directed against false personation and false pretenses of that particular kind." (pp. 205, 206.)

See also 4 Am. Jur., Associations and Clubs, § 38, p. 479; 22 Am. Jur., False Pretenses, § 77, p. 486, and annotations found at 43 A. L. R. 914, and 62 A. L. R. 798.

We agree with the holding of the supreme court of Indiana, and, there being no decision of this court to the contrary, believe that it should be followed in the case before us. The judgment is therefore affirmed.