No. 79,079

STATE OF KANSAS, *Appellee*, v. FRANKIE BOYD, *Appellant*.
(999 P.2d 265)

Opinion filed March 10, 2000.

*Daniel C. Estes*, assistant appellate defender, argued the cause, and *Mary D. Prewitt*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, were on the brief for appellant.

*Sheryl L. Lidtke,* assistant district attorney, argued the cause, and *Nick A. To-masic,* district attorney, and *Carla J. Stovall,* attorney general, were with her on the briefs for appellee.

The opinion of the court was delivered by

ABBOTT, J.: This is a direct appeal by the defendant, Frankie Boyd, from his convictions by a jury of four counts of aggravated indecent liberties with a child, two counts of aggravated criminal sodomy, and one count of sexual battery. The Court of Appeals held there was sufficient evidence to affirm Boyd's conviction for aggravated criminal sodomy and held it did not have jurisdiction to consider Boyd's remaining four issues. We granted Boyd's petition for review.

The unpublished Court of Appeals' opinion sufficiently sets forth the facts of this case. The Court of Appeals stated:

"Boyd was charged with numerous sex crimes. P.M., Boyd's niece, stated that Boyd's inappropriate touching started when she was approximately 12 years old while Boyd was living at her mother's house. Boyd would touch her breast when he was hugging her, poke her with his 'private parts,' and do other things that made her feel 'uncomfortable.' Boyd later moved out and the touching stopped.

"During summer vacation in 1996, P.M. went to live with her sister. Boyd also began staying there. P.M. stated that shortly after Boyd moved in, he entered her bedroom while she was asleep and 'got on top' of her. P.M. awoke to feel Boyd 'rubbing on [her] behind' with his hands. P.M. testified that events like this happened almost every morning. She stated that as time passed, Boyd began touching her breasts and genitals beneath her clothing. Boyd placed his mouth on her vagina, pulled at her skin with his teeth, and made growling noises. P.M. stated that she 'wrestl[ed]' with Boyd to try to make him stop; however, Boyd pinned her arms down with his hands.

"P.M. testified that she was scared to tell her family about what was happening. P.M. finally told her friend D.T. that Boyd had been 'messing' with her. D.T. told P.M.'s brother about the abuse. P.M.'s sister was told and she called the police. Boyd was then apprehended.

"At trial, the State introduced evidence showing that in 1982, Boyd was charged with having sexual intercourse with a 14-year-old niece in Wyoming. Boyd objected, stating that the documents from Wyoming were not properly authenticated. The judge allowed testimony about the incident and allowed the documents to be entered into evidence.

"During the trial, Judge Burdette became ill. Judge Sieve stepped in and presided over the trial. Boyd objected and moved for a mistrial. The motion was denied. Judge Sieve stated that if the need arose, he would have the court reporter

read back testimony, that was relevant to any contested legal issues. After the close of testimony but before the closing arguments and jury instructions were given, Judge Burdette returned to preside over the trial."

Boyd raised five issues before the Court of Appeals: (1) sufficiency of the evidence of "force or fear" to support a conviction of aggravated criminal sodomy; (2) failure to instruct the jury on indecent liberties with a child; (3) violation of his Sixth Amendment right to assistance of counsel; (4) violation of his Sixth Amendment right to a fair trial and due process; and (5) error in admitting evidence of a previous Wyoming conviction for a similar crime. The Court of Appeals addressed the sufficiency of the evidence issue and affirmed it. The Court of Appeals dismissed the remaining four issues, holding that Boyd's notice of appeal was not sufficient to confer jurisdiction.

## I. JURISDICTION

Boyd's notice of appeal states: "Comes now the defendant and appeals from his conviction in the above captioned matter."

The Court of Appeals held that the "conviction" language was not broad enough to include procedural or evidentiary errors claimed by Boyd and dismissed the portion of his case which concerned those issues. The Court of Appeals stated:

"Boyd's appellate brief, in addition to the sufficiency of evidence issue, raises two 6th Amendment issues, an evidentiary issue, the trial court's failure to give an instruction, and the trial court's failure to rule on a motion. Boyd's notice of appeal only states that he 'appeals from his conviction.' Boyd does not even give the name of the court to which he is appealing as required by K.S.A. 1998 Supp. 60-2103(b). Boyd's notice of appeal was specific. Boyd's notice contains no general reference which could be liberally construed to include the admission of evidence, jury instruction, and motion issues addressed in his appellate brief. This court has no jurisdiction over these issues and they are dismissed."

Prior to the codification of the rules of appellate procedure in 1963, the General Statutes of Kansas required parties wishing to appeal to the Supreme Court to file a notice of appeal and an abstract. The notice of appeal statute required that

"the party filing the same appeals from the judgment, order or decision complained of to the supreme court, and if the appeal is taken from only a part of the judgment, or from a particular order or decision, then by stating from what part

of the judgment, or from what particular order or decision the appeal is taken." G.S. 1949, 60-3306.

The appellate statutes also required that appellants file an abstract which would "include a specification of the errors complained of, separately set forth and numbered." G.S. 1949, 60-3826. The Supreme Court, at the time, vigorously enforced the requirement that an appellant specify all of the rulings appealed from in his or her notice of appeal. See *State v. Aeby*, 191 Kan. 333, 335, 381 P.2d 356 (1963) (the court had no jurisdiction to consider the appellant's specifications of error as appellant had failed to specifically set forth the errors in his notice of appeal); *State v. Burnett*, 189 Kan. 31, 33, 367 P.2d 67 (1961) (an appellant is not "entitled to a review of every matter involved in his trial and sentence without complying with the well-established rules of procedure relating to appellate review"); *State v. Jones*, 187 Kan. 318, 319, 356 P.2d 843 (1960) (the court had no jurisdiction to hear the defendant's appeal concerning his motion for a new trial as his notice of appeal only stated that he was appealing from the " 'decision and judgment' "); *State v. Lewis*, 187 Kan. 221, 222, 356 P.2d 845 (1960) (a notice of appeal was insufficient to contest the trial court's denial of the defendant's motion for a new trial where the notice of appeal merely stated that the defendant appeals " 'from the verdict and Judgment rendered in the above entitled case' " and "[i]t is an established rule of appellate procedure that matters specified as error are not reviewable unless they are within the purview of those matters contained in the notice of appeal"); *State v. Trinkle*, 186 Kan. 809, 810-11, 352 P.2d 937 (1960) (the defendant's notice of appeal was insufficient to contest the denial of his motion for a new trial as it merely stated that the defendant " 'wishes to appeal his case to the Kansas Supreme Court' "); and *State v. Turner*, 183 Kan. 496, 499-500, 328 P.2d 733 (1958) (the defendant's notice of appeal was insufficient to contest his nine specifications of error as the notice only stated that he was appealing the " 'judgment rendered on a verdict returned by a jury in the above entitled action' "). See also *Carrick v. McFadden*, 216 Kan. 683, 690, 533 P.2d 1249 (1975) (prior to the enactment of

K.S.A. 60-2103 this court consistently held that rulings which had not been specified in the notice of appeal "presented nothing for appellate review").

In 1963, the Kansas Legislature codified the rules of civil and appellate procedure. The current rules do not require a party to specify the errors complained of. K.S.A. 1999 Supp. 60-2103(b) addresses the notice of appeal and sets forth:

> "The notice of appeal shall specify the parties taking the appeal; *shall designate the judgment or part thereof appealed from,* and shall name the appellate court to which the appeal is taken. The appealing party shall cause notice of the appeal to be served upon all other parties to the judgment as provided in K.S.A. 60-205, and amendments thereto, but such party's failure so to do does not affect the validity of the appeal." (Emphasis added.)

Supreme Court Rule 2.02 (1999 Kan. Ct. R. Annot. 8) addresses the "Form of Notice of Appeal" for the Court of Appeals. The rule requires that parties "substantially" follow the form: "Notice is hereby given that (specify the party or parties taking the appeal) appeals(s) from (*designate the judgement or part thereof appealed from*) to the Court of Appeals of the State of Kansas." (Emphasis added.)

As with the advent of notice pleading, the appellate process was greatly simplified in 1963. It is clear that by the legislative changes in 1963, the legislature intended it to be easier to take an appeal to an appellate court in Kansas. The process was simplified, with the goal being to afford every criminal defendant at least one appeal. K.S.A. 1999 Supp. 60-2103 was originally drafted, and remains virtually the same today, to only require an appellant to "designate the judgment or part thereof appealed from." There is no statute or court rule which expressly requires an appellant to set forth all of the errors that will be contested on appeal in the notice of appeal. When the legislature repealed G.S. 1949, 60-3306, and 60-3826 and enacted K.S.A. 60-2103, it was a signal that it is no longer necessary to specify each and every issue to be contested on appeal in the notice of appeal.

In its unpublished opinion, the Court of Appeals cited several cases to support the dismissal of Boyd's procedural and evidentiary issues. A review of those cases is warranted. In fairness to the State,

it readily concedes the Court of Appeals erred and should have considered the remaining four issues.

In *State v. Kerby*, 259 Kan. 104, 910 P.2d 836 (1996), the State attempted to appeal. Both K.S.A. 22-3602 and K.S.A. 22-3603 are very specific in limiting the State's ability to appeal. Thus, the *Kerby* case is distinguishable from the case at bar.

In *State v. G.W.A.*, 258 Kan. 703, 906 P.2d 657 (1995), the State attempted to appeal from a "Judgment of Acquittal." We held the State's notice of appeal referred solely to an appeal from the judgment of acquittal. The notice of appeal contained nothing that could be liberally construed to include an appeal on a question reserved.

*G.W.A.* is distinguishable from the question presented in this case. Furthermore, both *Kerby* and *G.W.A.* involve a State appeal and not the appeal of a criminal defendant. While the State only has limited appeal rights, a criminal defendant has a nearly unlimited right of review. K.S.A. 22-3602(a) provides:

"[A]n appeal . . . may be taken by the defendant as a matter of right from any judgment against the defendant in the district court and upon appeal any decision of the district court or intermediate order made in the progress of the case may be reviewed."

See also *State v. Walker*, 260 Kan. 803, 806, 926 P.2d 218 (1996) (noting that appeals by the State in criminal cases are very restricted while appeals by "defendants in criminal matters are much less restricted" and further noting that K.S.A. 22-3602[a] "may be read as diminishing any requirement for specificity in a defendant's notice of appeal").

*Hess v. St. Francis Regional Med. Center*, 254 Kan. 715, 869 P.2d 598 (1994), involved a civil matter and not a criminal conviction. Although cited by the Court of Appeals in the present case, *Hess* stands for the proposition that a "liberal construction" should be used when determining whether a notice of appeal is sufficient to give an appellate court jurisdiction over a case. In *Hess*, the appellant filed a notice of appeal which specified four points of error, all focusing on issues concerning damages. On appeal, St. Francis argued that Hess' specific notice of appeal precluded this

court from considering an issue concerning the admission of evidence of a pretrial settlement. St. Francis argued "that because plaintiff's notice of appeal does not designate any trial court rulings as being challenged, consideration of any claim by Hess that the trial judge erred is precluded." 254 Kan. at 719. This court disagreed and held that the notice of appeal should be "broadly construed." 254 Kan. at 719. We stated:

"K.S.A. 60-102 provides for liberal construction to secure the just, speedy, and inexpensive determination of every action or proceeding. The code of civil procedure was not rewritten to make more technical and burdensome the requirements of the notice of appeal as construed by the court in its previous decisions." 254 Kan. at 720.

Although *Hess* is also distinguishable from the facts of the present case, it does provide insight to the Kansas modern-day philosophy concerning appeals. The notice of appeal should not be overly technical or detailed. The notice of appeal is not a device to alert the parties to all possible arguments on appeal. That is the purpose and function of the docketing statements and briefs filed by the parties. The briefs should list all of the issues to be argued by the parties and should contain the arguments and authorities for each issue. See Supreme Court Rules 6.02 and 6.03 (1999 Kan. Ct. R. Annot. 33, 35). The State does not generally take any significant action when receiving a notice of appeal. The fact that a notice may generally state that the defendant is appealing his "conviction" does not harm or even affect the State in any appreciable way. The State determines the issues to be argued by reading the docketing statement and brief filed by the appellant and is given an opportunity to respond by filing its own brief. Whether a party has detailed its arguments in the notice of appeal does not affect the State's practice or its appellate strategy.

An examination of *State v. Griffen*, 241 Kan. 68, 734 P.2d 1089 (1987), is helpful. In *Griffen*, the defendant pled guilty to one count of sexual battery and was sentenced to 3 to 10 years. Griffen moved for a modification of his sentence, which the court denied. Griffen then filed a timely notice of appeal which merely stated that he was appealing from "his conviction and sentence." On appeal, Griffen raised two issues: "(1) Whether a defendant is entitled

as a matter of right to a transcript of the hearing on a motion to modify sentence, and (2) whether the trial judge erred in failing to recuse himself at the time of sentencing." 241 Kan. at 69. The State argued that the notice of appeal was insufficient in that it did not specifically note that Griffen was appealing from the trial court's ruling on the motion to modify the sentence. This court held that Griffen's notice of appeal was sufficient to allow him to raise both issues and stated:

"We find the State's jurisdictional attack to be without merit. This Court is the final arbiter in determining whether statutory jurisdictional requirements have been met in any case filed in the courts of Kansas. We have often recognized that jurisdiction in any action on appeal is dependent upon strict compliance with the statutes. However, when there is a valid controversy whether the statutory requirements have been complied with, we are required to construe those statutes liberally to assure justice in every proceeding. [Citations omitted.] There is no showing that the notice of appeal misled the State or that anyone was surprised or prejudiced by the issues on appeal. We conclude the notice of appeal was sufficient to vest jurisdiction in this court." 241 Kan. at 69-70.

*Walker,* 260 Kan. 803, is also instructive. In *Walker,* the defendant filed a notice of appeal which stated that he was " 'appealing the Order of District Court Judge David Kennedy overruling defendant's motion to modify the order of revocation of defendant's probation.' " 260 Kan. at 805. The State argued that the issue set forth in the brief did not "share precise identity with the ruling designated in the notice of appeal" and that, therefore, this court did not have jurisdiction to hear Walker's case. 260 Kan. at 805. Noting that a criminal defendant has much greater right to an appeal than does the prosecution and that the notice of appeal requirement should be read broadly, we held that Walker's notice of appeal sufficiently set forth that Walker wished to contest the revocation of his probation.

We hold that Boyd's notice of appeal, which stated that he "appeals from his conviction in the above captioned matter" was sufficient to give the Court of Appeals jurisdiction to hear issues other than the sufficiency of evidence question and that the Court of Appeals should have addressed Boyd's evidentiary and procedural

claims. We remand to the Court of Appeals to consider the remaining four issues.

## II. SUFFICIENCY OF THE EVIDENCE

Boyd argues that there was insufficient evidence that he used "force or fear" in the commission of a sodomy which would support his conviction for *aggravated* criminal sodomy.

When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Johnson*, 266 Kan. 322, 326, 970 P.2d 990 (1998). When a verdict is challenged for insufficiency of evidence or as being contrary to the evidence, it is not the function of this court to weigh the evidence or pass on the credibility of the witnesses. *Wisker v. Hart*, 244 Kan. 36, 37, 766 P.2d 168 (1988).

K.S.A. 21-3505(a)(2) defines criminal sodomy as

"sodomy with a child who is 14 or more years of age but less than 16 years of age."

K.S.A. 21-3506(a)(3), in pertinent part, defines *aggravated* criminal sodomy as

"sodomy with a person who does not consent to the sodomy or causing a person, without the person's consent, to engage in sodomy with any person or an animal, under any of the following circumstances:
(A) When the victim is overcome by force or fear; [or]
(B) when the victim is unconscious or physically powerless."

P.M. testified at trial that both incidents of sodomy occurred at her sister's house during the summer of 1996. P.M. said that on the first occurrence, Boyd put his mouth on her vagina while she was asleep and that she woke up when she felt him pulling her panties down. P.M. testified that as she awoke, she tried to resist Boyd and that "we was kind of tumbling, I mean, like little wrestling or whatever" to keep Boyd from turning her over on her back. After physically wrestling P.M. so that she was lying on her back, Boyd "pinned me down, . . . pinned my arms down." After Boyd

had P.M. "pinned down," he began moving his tongue into her vagina. P.M. testified that Boyd told her to "be still" and to "hush."

P.M. testified that the second occurrence of sodomy was even more violent than the first one. P.M. testified that they "really tussled in the bed that day." P.M. said that she "was trying to push his head off—push his head back with my hands, but . . . it didn't do no good. . . . It didn't stop him." P.M. also described that she felt pain when Boyd pulled at the skin of her vagina with his teeth as she tried to push his head away.

We hold that the evidence, when viewed in a light most favorable to the prosecution, could convince a rational factfinder that Boyd was guilty beyond a reasonable doubt of two counts of aggravated criminal sodomy.

Boyd has not had an opportunity for oral argument on the remaining four issues and they are remanded to the Court of Appeals for further proceedings.

Affirmed in part, reversed in part, and remanded with directions.