NOT DESIGNATED FOR PUBLICATION

No. 120,507

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of
L.E., A.H., and A.E., Minor Children.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; KEVIN M. SMITH, judge. Opinion filed September 27, 2019. Affirmed.

*Anita Settle Kemp*, of Wichita, for appellant natural mother.

*Jordan E. Kieffer*, of Dugan & Giroux Law, Inc., of Wichita, for appellant natural father.

*Julie A. Koon*, assistant district attorney, and *Marc Bennett*, district attorney, for appellee.

Before GREEN, P.J., STANDRIDGE, J., and MCANANY, S.J.

PER CURIAM: Following an evidentiary hearing on June 19, 2018, the parental rights of T.E. (Mother)—the natural mother of L.E., A.H., and A.E.—were terminated. On August 10, 2018, the parental rights of K.H. (Father)—the natural father of L.E., A.H., and A.E.—were terminated by default when he failed to appear despite proper service by publication. Both Mother and Father now appeal. Mother concedes that she is presently an unfit parent but claims that the district court erred when it found that there was clear and convincing evidence to show that she would remain unfit for the foreseeable future. Father claims: (1) The district court abused its discretion when it denied his motion to set aside the default judgment and (2) there was insufficient evidence to support the default judgment. Finding no error, we affirm.

1

On April 27, 2016, the State filed petitions in the Cowley County District Court alleging that L.E. and A.H. were children in need of care (CINC). The petitions named both Mother and Father and alleged that their history of domestic violence and drug abuse prevented L.E. and A.H. from receiving the care and control necessary for their physical, mental, and emotional health. In particular, the petitions pointed to an April 26, 2016 incident in which both Mother and Father were arrested for domestic violence and incarcerated in the Cowley County Jail. At a temporary custody hearing held later that day, the children were ordered into the custody of the Department for Children and Families (DCF) pending a formal adjudication of Mother and Father. That adjudication occurred a few weeks later, on May 17, 2016, at which point Mother admitted and Father pled no contest to the allegations in the CINC petitions. L.E. and A.H. were ordered to remain in DCF custody, and a proposed permanency plan was approved and adopted. The goal of the initial permanency plan was reintegration or adoption.

Over the course of the next year, the district court conducted a number of review hearings, all of which ordered that Mother and Father were to continue to work the case plan while L.E. and A.H. were to remain in DCF custody. A permanency hearing was held on March 8, 2017. The permanency plan submitted to the court stated that reintegration continued to be a viable goal. No changes were made to either the permanency plan or the custody status of L.E. and A.H. as a result of this hearing. On June 2, 2017, the CINC case was transferred to Sedgwick County because the family had moved. On August 13, 2017, a few months after the case was transferred, Mother gave birth to a third child, A.E. Mother eventually admitted that she believed Father was the natural father of A.E. but initially was reluctant to do so because having sex with Father was in violation of a no-contact order between the two of them.

On October 22, 2017, Mother was involved in a domestic violence incident with her then boyfriend, Curtis Spears. Spears reportedly pushed, choked, and hit Mother multiple times, causing her to suffer a broken jaw with a fragment of bone sticking out. A.E. was in the home at the time of the incident but was in her crib in a different room. Less than a week later, on October 26, 2017, Mother submitted a urinalysis (UA) test that tested positive for opiates. Based on the October 22, 2017 domestic violence incident and the positive UA test, as well as the history of domestic violence and drug abuse, on November 7, 2017, the State filed a petition alleging that A.E. was a child in need of care. The district court held a temporary custody hearing the next day and ordered that A.E. be placed into DCF custody. An adjudication hearing in A.E.'s case was held on December 1, 2017. Mother failed to appear. Based on the State's proffer of evidence, the court found A.E. to be a child in need of care as to Mother because A.E. (1) was without adequate parental care, control, or subsistence and the condition was not due solely to Mother's lack of financial means; (2) was without the care or control necessary to sustain A.E.'s physical, mental, or emotional health; and (3) A.E. had been physically, mentally, or emotionally abused or neglected or sexually abused. Father did appear at the hearing. A.E.'s CINC adjudication related to Father was continued so that paternity could be established.

In late 2017, Mother was purportedly still having domestic violence issues with Father. Mother initially did not report those incidents to police because she was worried that they would affect the ongoing CINC cases involving her children. In December 2017, however, Mother contacted the police and filed a protection from abuse order against Father. But when neither party appeared in court for the scheduled hearing, the order was dismissed.

On January 26, 2018, the district court held a permanency hearing regarding L.E. and A.H., at which both Mother and Father appeared. Citing to Mother and Father's continued and unabated domestic violence issues, the district court found that

3

reintegration was no longer viable and changed the goal of the permanency plan to adoption. The CINC case involving A.E. was continued so that paternity testing could be completed.

On March 22, 2018, the State filed a motion to terminate the parental rights of Mother and Father as to all three children. The motions alleged that Mother and Father were both unfit to parent by reason of conduct or condition which rendered them unable to properly care for L.E., A.H., and A.E.

On March 23, 2018, the district court conducted an adjudication hearing in A.E.'s CINC case. Father was notified of the hearing but failed to appear. Based on the evidence proffered by the State, the district court found the paternity testing established that Father was the natural father of A.E. The court further found A.E. was a child in need of care as to Father because she: (1) was without adequate parental care, control, or subsistence and the condition was not due solely to Father's lack of financial means; (2) was without the care or control necessary for her physical, mental, or emotional health; and (3) had been physically, mentally, or emotionally abused or neglected or sexually abused.

On June 19, 2018, the district court held a termination hearing regarding all three children. Father failed to appear, but the State acknowledged that its attempts to serve him with notice of the termination hearing had been unsuccessful. The termination proceedings regarding his parental rights were therefore continued so that the State could complete service by publication. The termination proceedings regarding Mother went ahead as scheduled.

After hearing the witness testimony and counsel's arguments, the district court ultimately found by clear and convincing evidence that Mother's conduct or condition rendered her unable to care for her children and that such conduct or condition was unlikely to change in the foreseeable future. Specifically, the district court found that (1)

4

Mother used intoxicating liquors, narcotics, or dangerous drugs; (2) Mother failed to avail herself of reasonable efforts made by appropriate agencies to rehabilitate the family; (3) Mother did not put forth the required effort to adjust her circumstances, conduct, or condition to meet the needs of her children; and (4) the children's extended out-of-home placement combined with Mother's failure to carry out a reasonable, court approved rehabilitation plan rendered Mother unable to properly care for L.E., A.H., and A.E. The district court further found that termination of Mother's parental rights was in the best interests of the children. Based on all of these findings, the court sustained the State's motion to terminate Mother's parental rights. Those findings were later memorialized in orders filed on August 8, 2018. Mother timely appealed.

As noted above, Father was never served with notice of the June 19, 2018 termination hearing, and disposition as to his parental rights was continued until proper service could be obtained. The State completed that service by publication on July 4, 2018, and July 11, 2018. A termination hearing was held on August 10, 2018, but Father did not appear. The State presented evidence that service on Father had been perfected. Father's counsel did not object to the evidence establishing that service had been accomplished by publication. The State then proffered its motion and proposed exhibits as the basis for termination of Father's parental rights. The district court accepted the State's proffer and, after finding Father in default, found by clear and convincing evidence that Father's conduct or condition rendered him unable to properly care for his children and that said conduct or condition was unlikely to change in the foreseeable future. Specifically, the district court found that (1) Father used intoxicating liquors, narcotics, or dangerous drugs; (2) Father failed to avail himself of reasonable rehabilitative efforts made by public and private agencies; (3) Father failed to put forth the effort required to adjust his circumstances, conduct, or conditions to meet the needs of his children; and (4) the children's extended out-of-home placement combined with Father's failure to carry out a reasonable, court approved rehabilitation plan rendered Father unable to properly care for L.E., A.H., and A.E. The district court then found that

termination of Father's parental rights was in the best interests of the children. Based on all of these findings, the court sustained the State's motion to terminate Father's parental rights. Those findings were later memorialized in orders filed on September 20, 2018.

On September 12, 2018, Father filed motions to set aside the default judgments terminating his parental rights. In those motions, Father claimed that he did not receive notice of the termination hearing because he was absent from the state due to a family emergency. He also asserted that default judgments are not favored by law particularly where, as here, the case involves the fundamental liberty interest that a party has in parenting his or her children. A hearing on Father's motions was held on October 26, 2018. After considering the arguments made by Father, the district court found that (1) setting aside the default judgment would prejudice the nondefault party (i.e., the children); (2) Father had no meritorious defense and had barely participated in the CINC case; and (3) the default judgment was not the result of excusable neglect. Based on those findings, the court denied Father's motions to set aside the default judgments. Father filed a notice of appeal on September 26, 2018, in which he specifically stated that he was appealing "the default judgment rendered against him finding him unfit and ordering the termination of his parental rights on August 10, 2018."

ANALYSIS

1. *Mother*

Mother does not contest that presently, her conduct or condition renders her unfit to properly care for her children. Instead, she argues the district court erred when it found by clear and convincing evidence that conduct or condition currently rendering her unfit is unlikely to change in the foreseeable future. When a child has been adjudicated a child in need of care, a district court may terminate parental rights if it finds by clear and convincing evidence that a parent's conduct or condition renders him or her unfit to properly care for the child and that said conduct or condition is unlikely to change in the

6

foreseeable future. K.S.A. 2018 Supp. 38-2269(a). In making that determination, a district court must consider a nonexclusive list of statutory factors, any one of which, standing alone, may establish grounds for termination. K.S.A. 2018 Supp. 38-2269(b)-(c), (f). When an appellate court reviews a district court's decision to terminate parental rights, it considers whether, when viewing the evidence in the light most favorable to the State, "a rational factfinder could have found it highly probable, *i.e.* by clear and convincing evidence, that the parent's rights should be terminated." *In re K.W.*, 45 Kan. App. 2d 353, 354, 246 P.3d 1021 (2011); see *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008). Appellate courts do not, however, reweigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. 286 Kan. at 705.

As noted above, Mother concedes that her present conduct or condition renders her unfit to properly care for her children. As such, we only need to decide whether, when viewed in the light most favorable to the State, there is clear and convincing evidence that the conduct or condition that renders Mother unfit to properly care for her children is unlikely to change in the foreseeable future. See K.S.A. 2018 Supp. 38-2269(a). Kansas courts consistently have held that "'foreseeable future'" must be evaluated from the child's perspective, not the parent's. *In re C.C.*, 29 Kan. App. 2d 950, 954, 34 P.3d 462 (2001). Children perceive time differently than adults do; therefore, courts must decide cases in "'child time'" rather than "'adult time.'" *In re L.B.*, 42 Kan. App. 2d 837, 842, 217 P.3d 1004 (2009); see also *In re A.A.*, 38 Kan. App. 2d 1100, 1105, 176 P.3d 237 (2008) ("[A] child deserves to have some final resolution within a time frame that is appropriate from that child's sense of time."). Further, district courts may look to a parent's past conduct as an indicator of future behavior. *In re Price*, 7 Kan. App. 2d 477, 483, 644 P.2d 467 (1982).

In this case, the court found Mother unfit by reason of conduct or condition which rendered her unable to properly care for L.E., A.H., and A.E. The district court based that finding on the following statutory factors:

1. "[T]he use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental or emotional needs of the child." K.S.A. 2017 Supp. 38-2269(b)(3).

2. "[F]ailure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family." K.S.A. 2017 Supp. 38-2269(b)(7).

3. "[L]ack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child." K.S.A. 2017 Supp. 38-2269(b)(8).

4. "[W]hether the child has been in extended out of home placement as a result of actions or inactions attributable to the parent and one or more of the factors listed in subsection (c) apply." K.S.A. 2017 Supp. 38-2269(b)(9).

5. "[F]ailure to carry out a reasonable plan approved by the court directed toward the integration of the child into a parental home." K.S.A. 2017 Supp. 38-2269(c)(3).

Again, Mother does not contest that there is clear and convincing evidence supporting the district court's finding that each of the above factors are present in this case and currently render her unfit to properly care for her children. Instead, she argues that there was not clear and convincing evidence to show that those factors would remain present in the foreseeable future.

Regarding the first factor—that Mother was unfit due to the use of intoxicating liquors, narcotics, or dangerous drugs—Mother contends she was clean and sober for a year beginning in February 2017 and only relapsed after A.E. was removed from the home. But that contention finds no factual support in the record. Indeed, Mother submitted a UA test that was positive for opiates on October 26, 2017, a result that served as one of the bases for the filing of a CINC petition regarding A.E. Mother also admitted that she relapsed shortly before the termination hearing when she used methamphetamine

8

that she found "on the ground" of the hotel room where she was staying. And finally, although Mother testified that she would stop using drugs and obtain treatment for the sake of her kids, she has failed to put in the effort necessary to obtain transportation to get herself to that treatment. She later testified that she did not think treatment was necessary because her use of illegal drugs was not very serious yet and had not been a "problem . . . like it was before." These facts, in combination with Mother's own testimony, establishes clear and convincing evidence that Mother's use of intoxicating liquors, narcotics, or dangerous drugs was unlikely to change in the foreseeable future, particularly when we view the facts and testimony in a light most favorable to the State and in the context of "child time." See *In re K.W.*, 45 Kan. App. 2d at 354; *In re L.B.*, 42 Kan. App. 2d at 842.

Regarding the remaining factors, Mother claims her lack of transportation, which she blamed on a lack of funds, prevented her from completing her case plan tasks and court orders. She also claims that the lack of funds impaired her ability to obtain and maintain adequate housing. But aside from some vague references to a potential job with a company that she could not remember the name of, there was no evidence to show that Mother was doing anything to change her financial situation. By contrast, the record contains numerous examples of Mother failing to adjust her circumstances in order to put the needs of her children first. With regard to transportation issues, the record reflects Mother was provided with a number of bus passes so that she could travel to and from her visitations with her children and her appointments with DCF. But rather than use those bus passes for their intended purpose, Mother either sold them or gave them away to other people. Similarly, Mother had a medical card that could be used to set up free transportation to and from her therapy appointments. But Mother testified that she had to call and schedule those free rides three days in advance, which she said was either too difficult or too much of a hassle for her. Based on this affirmative evidence demonstrating her failure to put in the required effort, along with the lack of evidence that Mother was taking any concrete steps to change her circumstances, we find there was clear and convincing evidence to show that the remaining factors that rendered Mother

9

unfit also were unlikely to change in the foreseeable future. See *In re Price*, 7 Kan. App. 2d at 483.

For the reasons stated above, we affirm the district court's decision finding by clear and convincing evidence that the conduct or condition currently rendering Mother unfit was unlikely to change in the foreseeable future. Because Mother does not challenge the district court's finding that the termination of her parental rights was in the best interests of the children, we decline to address that issue. See *State v. Williams*, 298 Kan. 1075, 1083, 319 P.3d 528 (2014) ("When a litigant fails to adequately brief an issue it is deemed abandoned.").

## 2. *Father*

### a. *Motion to set aside default judgment*

#### (1) *Jurisdiction*

In his brief on appeal, Father challenges (1) the district court's decision to deny his motion to set aside default judgment and (2) the district court's decision to terminate his parental rights. In its response brief, the State argues this court has no jurisdiction to review the first issue presented by Father—whether the district court erred in denying his motion to set aside default judgment—because Father failed to include the court's decision on that issue in his notice of appeal. The State's argument is grounded in K.S.A. 2018 Supp. 60-2103(b), which provides that "[t]he notice of appeal shall specify the parties taking the appeal; *shall designate the judgment or part thereof appealed from*, and shall name the appellate court to which the appeal is taken." (Emphasis added.)

Whether appellate jurisdiction exists is a question of law over which an appellate court's scope of review is unlimited. *State v. Unruh*, 39 Kan. App. 2d 125, 131, 177 P.3d 411 (2008) (citing *State v. Huff*, 278 Kan. 214, 217, 92 P.3d 604 [2004]). "'[J]urisdiction

in any action on appeal is dependent upon strict compliance with the statutes.'" *State v. Boyd*, 268 Kan. 600, 607, 999 P.2d 265 (2000). But, "'when there is a valid controversy whether the statutory requirements have been complied with, [courts] are required to construe those statutes liberally to assure justice in every proceeding.'" 268 Kan. at 607. Courts also look to whether there is a "'showing that the notice of appeal misled the State or that anyone was surprised or prejudiced by the issues on appeal.'" 268 Kan. at 607.

The question presented here is whether there is a valid dispute about whether Father complied with K.S.A. 2018 Supp. 60-2103(b) under the facts presented. If there is a valid dispute, this court should construe the applicable statute liberally. K.S.A. 2018 Supp. 60-102 ("The provisions of this act shall be liberally construed, administered and employed by the court and the parties to secure the just, speedy and inexpensive determination of every action and proceeding."); see *Mundy v. State*, 307 Kan. 280, 290-91, 408 P.3d 965 (2018). Although included in our recitation of the facts above, a brief chronology of the relevant documents filed by the court and by Father is necessary to determine whether there is a valid dispute about whether Father complied with K.S.A. 2018 Supp. 60-2103(b) as it relates to his claim on appeal that the district court erred in denying his motion to set aside default judgment.

07/04/2018: First publication of notice that a hearing would be held on August 10, 2018, to consider the State's motion to terminate Father's parental rights.

07/11/2018: Second publication of notice that a hearing would be held on August 10, 2018, to consider the State's motion to terminate Father's parental rights.

11

08/10/2018: Hearing held to consider the State's motion to terminate Father's parental rights. Father appeared at the hearing through counsel but not in person. The court found Father in default for purposes of termination. The State proffered evidence in support of termination. Based on this evidence, the court found by clear and convincing evidence that Father's conduct or condition rendered him unfit to properly care for his children, that said conduct or condition was unlikely to change in the foreseeable future, and that termination of Father's parental rights would be in the best interests of the children.

09/12/2018: Father filed a motion to set aside default judgment.

09/20/2018: The court filed written findings of fact and conclusions of law supporting its August 10, 2018 decision to terminate Father's parental rights.

09/26/2018: Father filed a notice of appeal of the default judgment—orally pronounced by the court at the hearing on August 10, 2018—finding him unfit and ordering the termination of his parental rights.

10/26/2018: A hearing was held on Father's motion to set aside default judgment. The court orally denied the motion.

01/09/2019: The court filed a written journal entry of judgment supporting its October 26, 2018 decision to deny Father's motion to set aside default judgment.

01/31/2019: Father filed his docketing statement, which identified the dates of the journals entry of judgment from which he is appealing as August 10, 2018, and October 26, 2018. Father identified the issues raised on appeal as whether the district court erred in entering default judgment against Father and whether the district court erred in denying Father's' motion to set aside the default judgment.

The parties do not dispute this chronology. And Father concedes he did not include in his notice of appeal a challenge to the court's decision denying his motion to set aside default. But Father maintains he could not have challenged the court's decision denying his motion to set aside default in his notice of appeal because his notice was filed a full month *before* the court orally denied his motion to set aside default and three months *before* the court entered its journal entry memorializing its decision.

To determine whether there is a valid dispute about whether Father complied with K.S.A. 2018 Supp. 60-2103(b) as it relates to the district court's decision to deny his motion to set aside default judgment, we find the Supreme Court's analysis in *Mundy* to be helpful. In that case, Mundy filed a pro se K.S.A. 60-1507 motion alleging that her trial counsel was ineffective. Based on the allegations, the court appointed counsel (1507 counsel) to represent her in the proceedings. The district court ultimately denied Mundy's motion. Mundy appealed. Her notice of appeal stated: "Comes Now the Petitioner, Vivian Mundy, by and through her attorney, Frederick L. Meier, II, and appeals the decisions made by the trial court to the Court of Appeals of the State of Kansas." *Mundy v. State*, No. 112,131, 2015 WL 5458546, at *4 (Kan. App. 2015) (unpublished opinion). In her appellate brief, however, Mundy argued for the first time on appeal that, in addition to her trial counsel, her 1507 counsel provided ineffective assistance of counsel. Relevant here, the State argued in its brief that the appellate court did not have jurisdiction to hear Mundy's claim that her 1507 counsel was ineffective because Mundy failed to specifically identify that issue in her notice of appeal. A panel of this court

13

agreed. *Mundy*, 307 Kan. at 285-86. But the Supreme Court ultimately reversed the panel's decision. In support of reversal, the court provided the following analysis:

> "Some history helps explain our past caselaw applying [K.S.A.] 60-2103. Prior to 1963, Kansas courts 'vigorously enforced' the then-requirement that parties file a notice of appeal as well as an abstract specifying exact errors subject to the appeal. In 1963, the legislature enacted 60-2103 with the purpose of making it 'easier to take an appeal,' and since its enactment this court has explained '[t]here is no statute or court rule which expressly requires an appellant to set forth all of the errors that will be contested on appeal in the notice of appeal.'

> "It is still, of course, 'a fundamental proposition of Kansas appellate procedure that an appellate court only obtains jurisdiction over the rulings identified in the notice of appeal.' But '[t]he current rules [of appellate procedure] do not require a party to specify the errors complained of,' but rather to designate the judgment or part thereof appealed from.

> "In determining how well a party has 'identified' or 'specified' the ruling complained of, we often consider whether the opposing party was able to discern and prepare for arguments on appeal. This is in keeping with our efforts to '[use] a liberal construction to secure the just, speedy, and inexpensive determination of every action or proceeding required by the code of civil procedure.'

> "There remains, however, 'a substantive minimum below which a notice cannot fall and still support jurisdiction.' In *State v. Walker*, 260 Kan. 803, 805-07, 926 P.2d 218 (1996), for example, this court acknowledged the defendant's briefed issue 'does not share precise identity with the ruling designated in the notice of appeal'—but the *subject* of the defendant's appeal was nonetheless 'quite apparent' from the notice. [Citations omitted.]" 307 Kan. at 291-92.

Based on this discussion, the Supreme Court ultimately held that Mundy's notice of appeal was sufficient to cover the substance of the district court's ruling, including the interrelated issue of whether 1507 counsel offered ineffective assistance before that tribunal. 307 Kan. at 294.

14

Based on the analysis set forth in *Mundy*, we hold that Father's notice of appeal is sufficient to provide this court with jurisdiction to consider Father's claim that the district court erred in denying his motion to set aside default judgment. We acknowledge that Father's challenge to the court's decision to deny his motion to set aside default judgment was not specifically identified in his notice of appeal. But Father's notice of appeal expressly states the substantive nature of the ruling challenged: the court's finding that Father was in default for purposes of termination, that Father's conduct or condition rendered him unfit to properly care for his children, that said conduct or condition is unlikely to change in the foreseeable future, and that termination of Father's parental rights would be in the best interests of the children. This notice sufficiently encompasses the interrelated issue of whether the district court erred in denying his motion to set aside the default judgment. In support of our conclusion in this regard, we note that Father's docketing statement, filed 22 days after the court's journal entry denying his motion to set aside the default judgment, specifically identifies the dates of the journal entry of judgments from which he is appealing as August 10, 2018 (the hearing date during which the court found Father in default for purposes of termination), and October 26, 2018 (the hearing date during which the court orally denied his motion to set aside default judgment). We also note that the State has not argued it was misled, surprised, or prejudiced by the notice of appeal as it relates to the issue of whether the district court erred by denying Father's motion to set aside default. And finally, our decision today is in keeping with our efforts to "[use] a liberal construction to secure the just, speedy, and inexpensive determination of every action or proceeding required by the code of civil procedure." *Hess v. St. Francis Regional Med. Center*, 254 Kan. 715, 720, 869 P.2d 598 (1994).

(2) *Merits*

Father claims the district court erred by denying his motion to set aside the default judgment. A district court may set aside a final default judgment under the terms of

15

K.S.A. 2018 Supp. 60-260(b) and K.S.A. 2018 Supp. 60-309. K.S.A. 2018 Supp. 60-255(b). Pursuant to K.S.A. 2018 Supp. 60-260, a district court may set aside a final judgment due to "[m]istake, inadvertence, surprise or excusable neglect" or for "any other reason that justifies relief." K.S.A. 2018 Supp. 60-260(b)(1), (b)(6). Appellate courts review the denial of a motion to set aside default judgment under an abuse of discretion standard. *Garcia v. Ball*, 303 Kan. 560, 565-66, 363 P.3d 399 (2015). A judicial action constitutes an abuse of discretion if: (1) no reasonable person would take the view adopted by the trial court; (2) it is based on an error of law; or (3) it is based on an error of fact. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015).

Father argues that the district court's decision to deny his motion to set aside default judgment was based on a mistake of fact. Specifically, Father argues that the district court put too much emphasis on his failure to communicate with anyone while he was out of state and ignored the fact that Father's health concerns and hospitalization prevented him from doing so. But that argument mischaracterizes the district court's ruling. It did not, as Father asserts, emphasize his failure to communicate with either his attorney or DCF during his hospitalization. Rather, the court focused on his failure to communicate throughout the course of his entire absence, including the time before he was hospitalized. The district court then emphasized the egregiousness of that failure given that Father knew that the CINC proceedings involving his children were active and ongoing. Indeed, the district court specifically noted that Father's absence and lack of communication had lasted for seven or eight months. The court concluded that it simply could not find that his failure to be present at the termination hearing constituted excusable neglect. We find the court's findings are supported by the record, including statements by Father's own counsel. As such, we conclude the district court did not abuse its discretion when it denied Father's motion to set aside default judgment. See *Garcia*, 303 Kan. at 565-66.

16

b. *Termination of parental rights*

Father's second claim on appeal is that there was insufficient evidence to support the district court's decision to terminate his parental rights. As previously noted, when a child has been adjudicated a child in need of care, a district court may terminate parental rights if it finds by clear and convincing evidence that a parent's conduct or condition renders him or her unfit to properly care for the child and that said conduct or condition is unlikely to change in the foreseeable future. K.S.A. 2018 Supp. 38-2269(a). In making that determination, a district court must consider a nonexclusive list of statutory factors, any one of which, standing alone, may establish grounds for termination. K.S.A. 2018 Supp. 38-2269(b)-(c), (f). When an appellate court reviews a district court's decision to terminate parental rights, it considers whether, when viewing the evidence in the light most favorable to the State, "a rational factfinder could have found it highly probable, *i.e.* by clear and convincing evidence, that the parent's rights should be terminated." *In re K.W.*, 45 Kan. App. 2d at 354; see *In re B.D.-Y.*, 286 Kan. at 705. Appellate courts do not, however, reweigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. 286 Kan. at 705.

Here, the district court found Father to be unfit based on the following statutory factors:

1. "[T]he use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental or emotional needs of the child." K.S.A. 2018 Supp. 38-2269(b)(3).
2. "[F]ailure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family." K.S.A. 2018 Supp. 38-2269(b)(7).

17

3. "[L]ack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child." K.S.A. 2018 Supp. 38-2269(b)(8).

4. "[F]ailure to carry out a reasonable plan approved by the court directed toward the integration of the child into a parental home." K.S.A. 2018 Supp. 38-2269(c)(3).

Father does not directly dispute any of these statutory factors. Instead, he generally argues that the record shows he was making efforts to achieve reintegration with his children by completing case plan tasks and attending hearings "quite consistently" prior to his unexpected departure from the state in early 2018. While the record supports Father's claim that he was making some effort to comply with his case plan before he went missing, the record also shows that any progress he made was insignificant at best and did nothing to demonstrate the type of progress needed to truly adjust his conduct, condition, or circumstances to meet the needs of his children. This is highlighted by the State's proffer of evidence at the termination hearing, which showed that Father: (1) had a significant and ongoing history of domestic violence incidents with Mother, the most recent of which occurred as late as December 2017; (2) continued to use dangerous drugs, namely methamphetamine and marijuana, throughout the CINC proceedings and submitted a positive UA test as recently as January 26, 2018; (3) failed to maintain stable housing or employment; (4) failed to complete all of his court orders or case plan tasks; and (5) failed to maintain contact with DCF, his attorney, or anyone else involved in the CINC cases, particularly when he unexpectedly left the State for seven or eight months immediately prior to the termination hearing involving his children. On appeal, Father does not dispute any of the district court's findings in support of unfitness. Viewed in a light most favorable to the State, this proffer, along with the absence of any challenge to that proffer by Father on appeal, leads us to affirm the court's conclusion that there exists clear and convincing evidence to show that Father is unfit. See *In re K.H.*, 56 Kan. App. 2d 1135, 1145, 444 P.3d 354 (2019) (When a parent fails to appear at a termination of

18

parental rights hearing, the State, at a minimum, should proceed "by proffering the evidence in support of its motion to the district court.").

The district court also found that the conduct or condition that rendered Father unfit to properly care for L.E., A.H., and A.E. was unlikely to change in the foreseeable future. As previously noted, Kansas courts consistently hold that what constitutes the "'foreseeable future'" must be evaluated from the child's perspective, not the parent's. *In re C.C.*, 29 Kan. App. 2d at 954. Children perceive time differently than adults do and therefore courts must strive to decide cases in "'child time'" rather than "'adult time.'" *In re L.B.*, 42 Kan. App. 2d at 842; see also *In re A.A.*, 38 Kan. App. 2d at 1105 ("[A] child deserves to have some final resolution within a time frame that is appropriate from that child's sense of time."). Further, district courts may look to a parent's past conduct as an indicator of future behavior. *In re Price*, 7 Kan. App. 2d at 483.

Again, Father does not challenge the district court's finding that his unfit conduct or condition is unlikely to change in the foreseeable future. In fact, Father's appellate brief makes no mention at all of the district court's foreseeable future finding. See *Williams*, 298 Kan. at 1083 ("When a litigant fails to adequately brief an issue it is deemed abandoned."). But even if it had, any argument that the district court's foreseeable future finding was not supported by clear and convincing evidence would ultimately be without merit. Throughout the two years these CINC cases were pending, Father failed to make any progress toward correcting the underlying issues that led to the initiation of CINC proceedings in the first place. When viewed in the light most favorable to the State and within the context of "child time," we affirm the district court's finding of clear and convincing evidence that the conduct or condition that rendered Father unfit was unlikely to change in the foreseeable future. See *In re K.W.*, 45 Kan. App. 2d at 354; *In re L.B.*, 42 Kan. App. 2d at 842; *In re Price*, 7 Kan. App. 2d at 483.

Like Mother, Father does not challenge the district court's finding that the termination of his parental rights was in the best interests of the children. As such, we similarly decline to address that issue. See *Williams*, 298 Kan. at 1083 ("When a litigant fails to adequately brief an issue it is deemed abandoned.").

Affirmed.